IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>THE MITCHELL GOLD CO., LLC., *et al.*,[1]<br><br>            Debtors. | Chapter 11<br><br>Case No. 23-11385 (LSS)<br><br>(Jointly Administered)<br><br>Objection Deadline: 9/25/23 at 4:00 p.m. ET<br>Hearing Date: 10/2/23 at 2:00 p.m. ET |

**MOTION OF PNC BANK, NATIONAL ASSOCIATION
FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d)
TO PERMIT PNC TO EXERCISE RIGHTS AND REMEDIES OR, IN THE
ALTERNATIVE, ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361 and 363(e)**

PNC Bank, National Association ("PNC") moves the Court for (a) relief from the automatic stay under 11 U.S.C. § 362(d) to permit PNC to exercise its rights and remedies or, in the alternative, (b) adequate protection pursuant to 11 U.S.C. §§ 361 and 363(e). In support of this motion, PNC submits the *Declaration of William Nolan in Support of Motion of PNC Bank, National Association for Relief from the Automatic Stay under 11 U.S.C. § 362(d) to Permit PNC to Exercise Rights and Remedies or, in the Alternative, Adequate Protection Under 11 U.S.C. §§ 361 and 363(e)* (the "Nolan Declaration") attached hereto, and respectfully states as follows.

**JURISDICTION**

1.    This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. Venue for this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of this Motion is a core proceeding pursuant to 28

---

[1] The Debtors in these chapter 11 cases, along with the Debtors' federal tax identification numbers are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). The Debtors' addresses are, respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417, Little Rock, Arkansas 72203.

1

U.S.C. § 157(b).  PNC confirms its consent pursuant to Del. Bankr. L.R. 9013-1(f) to the Court's entry of a final order resolving this Motion.  The statutory predicates for the relief requested are Bankruptcy Code sections 361 and 362(d).

## BACKGROUND

2.      On August 31, 2023 (the "Guarantor Petition Date"), Debtor SG-TMGC, LLC ("SG") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code and on September 6, 2023 (the "Borrower Petition Date" and together with the Guarantor Petition Date, the "Petition Date"), Debtor Mitchell Gold Co., LLC (the "Borrower," and together with SG, the "Debtors") filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

*Pre-Petition Relationship.*

3.      Pursuant to that certain *Revolving Credit and Security Agreement*, dated as of July 9, 2021 (as amended by (i) that certain First Amendment to Revolving Credit and Security Agreement, dated as of April 28, 2022, (ii) that certain Limited Waiver and Second Amendment to Revolving Credit and Security Agreement, dated as of October 31, 2022, (iii) that certain Limited Waiver and Third Amendment to Revolving Credit and Security Agreement and First Amendment to Subordination Agreement, dated as of January 20, 2023, (iv) that certain Fourth Amendment to Revolving Credit and Security Agreement, dated as of March 8, 2023, (v) that certain Limited Waiver and Fifth Amendment to Revolving Credit and Security Agreement dated as of June 26, 2023 (the "Fifth Amendment"), and (vi) as may be further amended, restated, supplemented or otherwise modified from time to time, the "Pre-Petition Credit Agreement,"[2] and collectively with the Other Documents (as defined in the Pre-Petition Credit Agreement), including all security agreements, pledge agreements, notes, mortgages, guarantees, control

---

[2]  A copy of the Fifth Amendment, which incorporates a redline of the Pre-Petition Credit Agreement reflecting the changes made through the Fifth Amendment and is the operative version of the Pre-Petition Credit Agreement is attached as **Exhibit A** to the Nolan Declaration.

2

agreements, collateral access agreements, and related agreements and documents (collectively, as amended, modified, supplemented, extended, restated, amended and restated, or replaced from time to time, the "Pre-Petition Financing Documents"), among (a) the Borrower (the "Pre-Petition Borrower"), (b) the guarantors party thereto, including SG (the "Pre-Petition Guarantors"), (c) PNC, as administrative agent (in such capacity, the "Pre-Petition Agent") and (d) the lenders party thereto (collectively, including the Pre-Petition Agent, the "Pre-Petition Lenders," and the Pre-Petition Lenders and the Pre-Petition Agent, together, the "Pre-Petition Secured Parties"), the Pre-Petition Lenders made loans and advances, and provided other financial accommodations, pursuant to the Pre-Petition Financing Documents to the Pre-Petition Borrower (the "Pre-Petition Credit Facility"). *See generally* Nolan Declaration, Ex. A; Edgecomb Declaration (as defined herein), ¶ 16. The Pre-Petition Guarantors guaranteed the Pre-Petition Obligations (as defined herein) of the Pre-Petition Borrower under the Pre-Petition Credit Agreement. *See id.*; Edgecomb Declaration, ¶ 19.

4. As of the Petition Date, the Pre-Petition Borrower and the Pre-Petition Guarantors were justly and lawfully indebted and liable to the Pre-Petition Secured Parties, in an amount equal to approximately $10,050,971, including, loans, letters of credit, and overdrafts, before accrued professional fees and expenses. *See* Nolan Declaration, ¶ 11. Collectively, the principal amount, together with accrued and unpaid interest, any fees, costs, expenses and disbursements (including attorneys' fees, accountants' fees, auditor fees, appraisers' fees and financial advisors' fees, and related expenses and disbursements), indemnification obligations, hedging obligations, guarantee obligations, and other charges, amounts and costs of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing, or chargeable in respect of any of the Pre-Petition Borrowers' or the Pre-Petition Guarantors' obligations pursuant to, or

secured by, the Pre-Petition Financing Documents, including all Obligations (as defined in the Pre-Petition Credit Agreement)), the "**Pre-Petition Obligations**," which Pre-Petition Obligations have been guaranteed on a joint and several basis by the Pre-Petition Guarantors. *See* Nolan Declaration, ¶ 9, 10; Edgecomb Declaration, ¶¶ 17, 19.

5. As of the Petition Date, the Pre-Petition Obligations were secured pursuant to the Pre-Petition Financing Documents by valid, binding, perfected, enforceable, and non-avoidable security interests and liens ("**Pre-Petition Liens**") granted by the Debtors to the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Parties, upon the "Collateral" (as defined in the Pre-Petition Credit Agreement) in existence as of the Petition Date (hereafter, the "**Pre-Petition Collateral**").³ *See generally* Nolan Declaration, Ex. B; Edgecomb Declaration, ¶ 16. The Pre-Petition Agent, on behalf of the Pre-Petition Lenders, has a valid, binding, and perfected non-avoidable security interest and lien in all of Pre-Petition Collateral, including all amounts on deposit in all of Pre-Petition Borrower's banking, checking, or other deposit accounts with any of the Pre-Petition Secured Parties, whether as original collateral or as proceeds of other Pre-Petition Collateral. *Id.*

6. To the extent the Debtors' indebtedness to PNC is over-secured, PNC is entitled to continually accrued and accruing interest, fees, costs, and expenses pursuant to 11 U.S.C. § 506(b). *See* 11 U.S.C. § 506(b); *generally* Nolan Declaration, Ex. A.

*Chapter 11 Cases*

7. On or about September 2, 2023, SB360 Capital Partners ("SB360") made a written offer to acquire substantially all of the assets of the Debtors for $9.5 million, which was the approximate amount of PNC's debt. *See* Nolan Declaration, ¶12. This offer excluded the

---

³ PNC perfected its security interest in the Pre-Petition Collateral by filing various UCC Financing Statements with the applicable Departments of State, copies of which are attached to the Nolan Declaration as **Exhibit B**.

Debtor's wholesale accounts receivable in the approximate amount of $825,000, which would be additive to PNC's recovery. *Id.*

8.     On September 12, 2023, the Debtors filed the *Declaration of Dalton Edgecomb in Support of Chapter 11 Petitions and First Day Motion* [D.I. 18] (the "Edgecomb Declaration"), which among other things, confirmed the pre-petition indebtedness of the Debtors to PNC under the Pre-Petition Credit Agreement.  *See generally* Edgecomb Declaration, ¶¶ 16-20.

9.     On the same day, they filed the *Debtor's Motion for Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* [D.I. 28] (the "DIP Motion"), seeking approval for debtor-in-possession financing from The Stephens Group, LLC on an interim basis in the approximate amount of $3 million and are seeking approval on a final basis of approximately $9.3 million to fund their proposed sale process. *See* DIP Motion *generally*; Nolan Declaration, ¶ 7.

10.     On September 13, 2023, PNC filed a preliminary objection to the DIP Motion and a request for adequate protection [D.I. 36] (the "PNC Objection").  The Court has entered an interim order approving the DIP Motion [D.I. 82] (the "Interim DIP Order") and, according to the milestones set forth in the Term Sheet (as defined in and attached to the DIP Motion), the Debtors will need to pay October rent before the closing any sale.  *See* Term Sheet, "DIP Milestones" (sale order within forty-four (44) days); Budget (as defined in the DIP Motion).  If these chapter 11 cases go through the end of the Budget period, the Debtors project spending $8,518,343, including $1.528 million in Debtors' professional fees, plus $416,000 in Committee and U.S. Trustee fees, another $853,000 in rolled-up pre-petition professional fees and,

beginning in October, $3.682 million in rent and utilities for October and November (i.e., excluding September accruals). *See* Budget.

11. On September 15, 2023, the Debtors filed their motion to approve an expedited Bankruptcy Code section 363 sale process, including bidding procedures [D.I. 73] (the "<u>Sale Motion</u>").

## RELIEF REQUESTED

12. PNC requests relief from the automatic stay under Bankruptcy Code § 362(d)(1) to sell or otherwise liquidate all the assets of Debtors subject to PNC's liens, or in the alternative, PNC requests adequate protection under Bankruptcy Code §§ 361 and 363(e). Debtors' chapter 11 sale process is unnecessarily expensive, time consuming, will likely not generate the same level of return for all creditors compared to an Article 9 sale, and will likely render PNC undersecured.

## BASIS FOR RELIEF REQUESTED

13. Bankruptcy Code section 362(d) provides that the court shall grant relief from the automatic stay "for cause, including lack of adequate protection of an interest in property of such party in interest" 11 U.S.C. § 362(d)(1). Section 361 of the Bankruptcy Code provides that:

> when adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by- (1) requiring … periodic cash payments to such entity to the extent that the say under section 362 … results in a decrease in the value of such entity's interest in such property; (2) providing to such entity an additional or replacement lien to the extent that such stay … results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title … as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361. Section 363(e) provides that "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased,

6

or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

### A. The Court Should Grant Relief from the Automatic Stay for Cause Under Section 362(d)(1) as PNC Lacks Adequate Protection

14. Reading § 362(d)(1) and § 361 together, a secured creditor should receive relief from the automatic stay if such secured creditor is not adequately protected in its collateral. *In re Cont'l Airlines*, 154 B.R. 176, 180 (Bankr. D. Del. 1993). If a request for relief from the automatic stay is not granted, and the value of the collateral is declining, adequate protection may be required. *Id*. (citing *United Savings v. Timbers of Inwood Forest*, 484 U.S. 365 (1988)).

15. Here, cause exists because PNC's interest in the Pre-Petition Collateral is not adequately protected. The Debtors have made much of the fact that the DIP Facility is "junior" to PNC. However, PNC has no protection from the Debtors (who are controlled by Stephens) seeking to surcharge the Pre-Petition Collateral under § 506(c).[4] Any § 506(c) surcharge to repay expenses of these cases would effectively allow the DIP facility to prime PNC's position as senior lien holder and would likely, therefore, render PNC undersecured in the Pre-Petition Collateral. Granting relief obviates this issue, as PNC would pay the far lower expenses of sale from its collateral.

16. As of the Petition Date, the Pre-Petition Collateral was sufficient to render PNC fully secured. However, upon entry of a final order, the DIP facility obligates the Debtors to repayment of $9.3 million of post-petition indebtedness. *See* DIP Motion at ¶ 13. Based on the SB360 proposal, PNC could have been paid in full through a consensual Article 9 sale as of the

---

[4] PNC disputes the Debtors ability to surcharge PNC's collateral under the circumstances, including whether the Debtors can sustain their burden to surcharge under 11 U.S.C. § 506(c). PNC reserves all rights with respect to any prospective attempt to surcharge the Pre-Petition Collateral.

Petition Date.  *See* Nolan Declaration, ¶ 12.  Therefore, to the extent the Debtors incur all of the proposed obligations in their Budget, they would need to sell their assets for at least approximately $19 million to net an amount in excess of the amount for which PNC can liquidate the Pre-Petition Collateral in an Article 9 sale, subject to a competitive bidder process.  *See id*. at ¶ 13.  The Debtors' sale process is unlikely to yield proceeds that will yield a greater net recovery to the estate than an Article 9 process.  *See id.* at ¶ 14.

17. Any increase in costs over the most optimistic scenario results in less likelihood that sale proceeds generate a net return to unsecured creditors.  Said another way, the Debtors' proposed sales process, both increases the chance for harm to PNC while reducing the chance of a benefit to the Debtors' estates.  A chapter 11 process that increases a debtor's debt level with little to no benefit to the debtor while harming a fully secured lender is cause for lifting the automatic stay.  *See*, *In re LTAP US, LLLP*, 2011 Bankr. LEXIS 667, at *11 (Bankr. D. Del. Feb. 18, 2011) ("it is clear from the evidence … that a wait, watch and hope approach to the case would place [the secured lender] at increasing risk with little or no benefit to Debtor.  It has to mean something to be a fully secured lender").  Accordingly, the Court should grant PNC relief from § 362 for cause as PNC lacks adequate protection.

18. In addition, the Sale Motion proposes to sell substantially all of the Debtors' assets, including the Pre-Petition Collateral.  Under Bankruptcy Code section 363(e), this proposed use or sale of PNC's collateral is without PNC's consent and, therefore, PNC requests this Court condition such use or sale, as necessary, to provide adequate protection of PNC's interest in the Pre-Petition Collateral.

### B. In the Alternative the Court Should Grant Adequate Protection to PNC in the Form of a § 506(c) Surcharge Waiver

19. If a request for relief from the automatic stay is not granted, and the value of collateral is declining, adequate protection is required. *In re Cont'l Airlines*, 154 B.R. at 180. If a secured creditor's interest in its collateral decreases because of debtor-in-possession financing harming a secured creditor's collateral value, adequate protection is required. *See*, *LTAP US*, 2011 Bankr. LEXIS 667, at *8-11 (finding that adequate protection must exist before approving DIP financing that would prime a secured lender).

20. Because the Debtors refused to provide adequate protection to PNC in connection with the Interim DIP Order, PNC is compelled to request the following as adequate protection: (a) in connection with any disposition of the Pre-Petition Collateral, including any collection, monetization, or sale, proceeds therefrom shall be paid to PNC to pay down the Pre-Petition Obligations until indefeasible payment thereof and prior to payment of any such proceeds to the junior DIP lender; (b) prohibition of the estates' ability to charge a § 506(c) surcharge on the Pre-Petition Collateral; and (c) a superpriority claim pursuant to § 507(b) for the diminution in value of the Pre-Petition Collateral, if any. A § 506(c) surcharge waiver will easily and adequately protect PNC's security interest in the Pre-Petition Collateral and is often approved in connection with final debtor-in-possession financing orders in Delaware. *See e.g. In re Rupari Holding Corp.*, 2017 Bankr. LEXIS 4041, at *44 (Bankr. D. Del. May 12, 2017); *In re DirectBuy Holdings, Inc.*, 2017 Bankr. LEXIS 4489, at *33 (Bankr. D. Del. Jan. 10, 2017); *In re Coda Holdings, Inc.*, 2013 Bankr. LEXIS 5476, at *73 (Bankr. D. Del. May 3, 2013).

21. As discussed *supra*, PNC's collateral value is likely to decrease if the Debtors' sale process continues without a § 506(c) surcharge waiver, and the longer it goes on, the more value will decrease. Adequate protection is required if the value of collateral is decreasing while

the automatic stay is in place. *In re Cont'l Airlines*, 154 B.R. at 180. Therefore, the Court should require a § 506(c) surcharge waiver be included in any order approving the DIP Motion on a final basis in order to prevent PNC's interest in the Pre-Petition Collateral from decreasing. *See LTAP US*, 2011 Bankr. LEXIS 667, at *9 (denying DIP financing because the lender being primed could not be adequately protected).

## NOTICE

22. Notice of this Motion has been or will be provided to the following parties or their counsel of record: (i) the Debtors, (ii) the Office of the United States Trustee, (iii) the Debtors' twenty (20) largest unsecured creditors as listed on the petition, and (iv) all parties that have filed in this case a request for service under Fed. R. Bankr. P. 2002(i). PNC submits that, in light of the nature of the relief requested, no other or further notice need be given.

WHEREFORE, PNC respectfully requests relief from the automatic stay (i) to sell or otherwise liquidate the Pre-Petition Collateral and apply such proceeds to the Pre-Petition Obligations; or, in the alternative, (ii) for adequate protection in the form of a § 506(c) surcharge waiver in any final order approving the DIP Motion; and (iii) for such other relief as may be equitable, just and necessary.

Dated: September 18, 2023

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Regina Stango Kelbon (No. 5444)
Stanley B. Tarr (No. 5535)
B. Nelson Sproat (No. 6925)
1201 Market Street, Suite 800
Wilmington, DE 19801
Phone: (302) 425-6400
Facsimile: (302) 425-6464
Email: regina.kelbon@blankrome.com
      stanley.tarr@blankrome.com
      nelson.sproat@blankrome.com

-and-

John E. Lucian (admitted *pro hac vice*)
One Logan Square
Philadelphia, PA 19103
Phone: (215) 569-5500
Facsimile: (215) 569-5555
Email: john.lucian@blankrome.com

*Counsel for PNC Bank, National Association*