**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| THE MITCHELL GOLD CO., LLC., *et al.*,[1] | Case No. 23-11385 (LSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: 10/2/23 at 2:00 p.m. ET<br>Objection Deadline: 9/25/23 at 4:00 p.m. ET |

**DECLARATION OF WILLIAM NOLAN IN SUPPORT OF MOTION OF PNC BANK, NATIONAL ASSOCIATION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d) TO PERMIT PNC TO EXERCISE RIGHTS AND REMEDIES OR, IN THE ALTERNATIVE, ADEQUATE PROTECTION UNDER 11 U.S.C. §§ 361 and 363(e)**

I, William Nolan, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am employed as a Senior Managing Director at FTI Consulting, Inc. ("FTI") and am the leader of FTI's Corporate Finance Financial Services Group. I have over 20 years of experience in restructuring and financial consultancy.

2. FTI is acting as a financial consultant to PNC Bank, National Association ("PNC") in connection with these bankruptcy cases. I am the senior FTI employee responsible for this matter.

3. As part of my duties, I became familiar with the secured indebtedness owed by the Debtors to PNC. I and my colleagues have participated in many communications with the Debtors' CRO, Dalton Edgecomb, and his Riveron colleagues, including Rick Malagodi, concerning the Debtors.

---

[1] Debtors in these chapter 11 cases, along with Debtors' federal tax identification numbers are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). Debtors' addresses are, respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417, Little Rock, Arkansas 72203.

4.  Based upon my review of information from the Debtors and PNC, I have gained personal knowledge concerning PNC's relationship with the Debtors and the secured indebtedness owed to PNC. I am familiar with the facts and circumstances set forth herein.

5.  I submit this declaration in support of PNC's Motion for Relief from the Automatic Stay under 11 U.S.C. § 362(d) to Permit PNC to Exercise Rights and Remedies or, in the Alternative, Adequate Protection Under 11 U.S.C. §§ 361 and 363(e).

**A.  The Bankruptcy**

6.  On August 31, 2023, debtor SG-TMGC, LLC ("SG") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On September 6, 2023 (the "Petition Date"), Mitchell Gold Co., LLC ("MG") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

7.  The Debtors have advised PNC that they intend to sell their assets through a § 363 sale process. On September 15, 2023, the Debtors filed a motion for approval of bid procedures. The Debtors recently obtained approval for debtor-in-possession financing from The Stephens Group, LLC on an interim basis in the approximate amount of $3 million and are seeking approval on a final basis of approximately $9.3 million to fund their proposed sale process.

**B.  The Revolving Credit and Security Agreement**

8.  PNC and the Debtors are parties to a Revolving Credit and Security Agreement dated as of July 9, 2021 (the "Credit Agreement"). The Credit Agreement has been amended five times, most recently as of June 26, 2023 pursuant to a Limited Waiver and Fifth Amendment to Revolving Credit and Security Agreement (the "Fifth Amendment"). A true and correct copy of the Fifth Amendment, which incorporates a redline of the Credit Agreement reflecting the changes made through the Fifth Amendment and is the operative version of the Credit Agreement, is attached as **Exhibit A** and incorporated by reference.

9. The Debtors' obligations to PNC under the Credit Agreement (the "Obligations") are secured by, among other things, a perfected, first-priority lien on substantially all of the property belonging to the Debtors, including without limitation accounts, accounts receivable, equipment (but not rolling stock), inventory, general intangibles, deposit accounts, investment property, and all proceeds of the foregoing (collectively, the "Collateral").

10. PNC perfected its security interest in the Collateral by filing various UCC Financing Statements with the applicable Departments of State, true and correct copies of which are attached hereto as **Exhibit B** and incorporated by reference.

11. As of the Petition Date, the Debtors were indebted to PNC in an amount equal to approximately $10,050,971, including loans, letters of credit and overdrafts, before accrued professional fees and expenses.

**D. Likelihood of the Debtors Sale Process Generating Proceeds More than the Expense of the Sales Process**

12. On or about September 2, 2023, SB360 made a written offer to acquire substantially all of the assets of the Debtors for $9.5 million, which was the approximate amount of PNC's debt. This offer was subject to an "Orderly process to allow for competitive bidding" and excluded the Debtors' wholesale accounts receivable in the approximate amount of $825,000, which would be additive to PNC's recovery.

13. Based on my years of experience in restructuring, workouts and bankruptcy, I believe that an out of court liquidation through an Article 9 sale would be much cheaper and more efficient than a chapter 11 sale process. Here, the cost of an Article 9 sales process would be minimal in comparison to the cost of a chapter 11 because it could be concluded almost immediately, with the liquidator absorbing the costs of sale and all post-closing obligations such as rent, utilities, insurance, security, etc.

14. However, the cost of consummating a sale through a § 363 process may cost up to $9.3 million based on the Debtors' DIP budget and would extend until late October at the earliest. Therefore, based on the projections in the Debtors' budget, a § 363 sale would need to generate a gross sales price at least $9.3 million higher than the amount owed to PNC in order to achieve a greater net recovery to the extent that the estates seek to impair PNC's full recovery by way of surcharge. Based on my discussions with the Debtor and its professionals and the information they have provided to date, I do not believe a § 363 sale will achieve a level that guarantees a purchase price in excess of PNC's debt and the amount of the DIP.

Dated: September 18, 2023

By  /s/William Nolan
William Nolan
Senior Managing Director
FTI Consulting, Inc.