**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>THE MITCHELL GOLD CO., LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11385 (LSS)<br><br>**Related Doc. No. 27** |

**OBJECTION OF RYDER LAST MILE, INC. TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO HONOR CERTAIN CUSTOMER PRACTICES AND AUTHORIZE DEVELOPING THE MERCHANDISE RETRIEVAL PROCESS, (II) AFTER TITLE IS DETERMINED, GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

Ryder Last Mile, Inc. ("Ryder") objects to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor Certain Customer Practices and Authorize Developing the Merchandise Retrieval Process, (II) After Title is Determined, Granting Limited Relief From the Automatic Stay, and (III) Granting Related Relief* [D.I. 27] (the "Motion"),[2] and states in support:

**Background**

**A.    Ryder's relationship with the Debtors**

1.    Beginning in February of 2022, and continuing still, Ryder has provided delivery and warehouse storage services to the Debtors, pursuant to a certain Transportation and Delivery Services Agreement dated as of February 21, 2022 (as may be amended from time to time, the "Services Agreement").

---

[1] The Debtors in these chapter 11 cases, along with the Debtors' federal tax identification numbers are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). The Debtors' addresses are, respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417, Little Rock, Arkansas 72203.
[2] Capitalized terms not otherwise defined in this Objection shall have the meanings given in the Motion.

2.      Pursuant to the Services Agreement, among other things, Ryder stores goods from the Debtors at its warehouse facilities for ultimate delivery to the Debtors' end-customers, including without limitation Finished Products, and then delivers them to the Debtors' end-customers (all such goods, the "Furniture Products").  Ryder's storage and delivery charges are typically paid by the end-customer to the Debtors, and the payments are then forwarded by the Debtors to Ryder.  Under the Services Agreement, responsibility for payment of Ryder's charges lies with the Debtors, as opposed to the end-customers.

3.      Ryder is presently storing over 2,000 separate Furniture Products, for delivery to approximately 607 of the Debtors' end-customers, in numerous Ryder warehouses all over the United States (collectively, and including any other Furniture Products that may come into Ryder's possession, the "Undelivered Furniture").  The aggregate storage charges for the Undelivered Furniture are presently accruing at a total of $4,140 per day.  Ryder estimates that its charges for delivering all of the Undelivered Furniture in its possession to the applicable end-customers would total approximately $200,000.  Under the laws applicable to the Undelivered Furniture and Ryder's warehouses, Ryder possesses senior liens on all Undelivered Furniture, securing all applicable outstanding charges, including without limitation charges for storage and delivery (collectively, the "Possessory Liens").[3]

4.      With respect to any given piece of Undelivered Furniture in its possession, Ryder needs to receive payment of all outstanding charges, including without limitation for storage and delivery (the "Undelivered Furniture Charges"), before it can release its applicable liens and turn

---

[3] Ryder's warehouses at which Furniture Products are stored are located in numerous different states, as are the applicable end-customers.  Ryder intends to assert all of its lien rights under all applicable law to the fullest extent possible, whether common law, statutory, equitable, or otherwise.   The term "Possessory Liens" shall include all applicable liens, under the laws of all applicable jurisdictions, to the fullest possible extent.  Ryder reserves all rights under all applicable law with respect to its lien rights.

over possession to any third party (including without limitation the end-customer). To date, Ryder has not received payment of any Undelivered Furniture Charges. As of the date of this Motion, Ryder's storage charges alone for the Undelivered Furniture total approximately $82,800 as of 9/25/23 ($4,140 per day since Debtors' petition date), and are increasing daily.

5.    In addition to the Undelivered Furniture Charges, as of the Petition Date, the Debtors owe Ryder at least $1,018,608.88 in unpaid storage and delivery charges on account on Furniture Products that Ryder previously stored, and has already delivered, to the Debtors' end-customers (the "Delivered Furniture Charges"). Ryder is informed that most, if not all, of the end-customers have already paid the Debtors for the Delivered Furniture Charges. However, the Debtors failed to turnover these payments to Ryder. Upon information and belief, PNC has since swept all of the funds from these payments, and presently has them in its possession.

6.    Ryder relinquished possession of these Furniture Products to the end-customers in reliance on the Debtors' fulfilling their duty to send the end-customers' payments for the associated charges to Ryder. If Ryder had known that the Debtors would instead retain these funds for themselves – and that PNC would then sweep these funds – Ryder would not have released possession of these Furniture Products.

7.    Because these funds were earmarked for Ryder from the moment they came into the Debtors' possession with knowledge of the Debtors and presumably PNC, Ryder asserts that they were – and still are – impressed with a constructive trust and equitable lien in Ryder's favor.[4] In addition to its Possessory Liens, Ryder asserts an equitable lien on all Furniture

---

[4] Ryder reserves all rights to assert any other liens that it may possess under any applicable law with respect to the Delivered Furniture Charges.

Products of any kind in its possession, securing payment of the Delivered Furniture Charges.[5]

**B.     The Debtors' Motion**

8.      The Motion contemplates that those of the end-customers who wish to retrieve their Furniture Products will pay "the cost of shipping" or "any associated costs." See Motion at ¶17.  The Motion makes no mention of storage charges, and ignores the fact that, in all likelihood, only a portion of the end-customers for the Undelivered Products will avail themselves of the Merchandise Retrieval Process.  What the Debtors expect to become of the un-retrieved goods, or how they expect the associated storage charges to be paid, the Debtors do not say.

9.      The Debtors themselves do not propose to pay any of Ryder's charges.  Indeed, Ryder's charges are not included in the budget attached to the Debtors' pending motion for authority to obtain post-petition financing and to use cash collateral.  See D.I 28.  Accordingly, the Debtors do not have the ability under current financing to pay Ryder's charges.  This failure to fund is ironic given that one purpose of the financing is to preserve the goodwill and value of the Debtors' general intangibles.

10.      Despite having omitted Ryder from their Budget, the Debtors have not moved to reject the Services Agreement, and by all accounts appear to be asking Ryder to provide its services on an ongoing basis "for free."  In other words, via operation of both the Motion and their DIP financing motion, the Debtors have effectively built a guaranteed administrative insolvency into these cases.

11.      In order to avoid being pressed into this involuntary servitude, Ryder objects to

---

[5] Ryder reserves all rights against PNC with respect to funds representing end-customer payments of Ryder's charges.  In addition, it is unclear whether PNC will take the position that the Undelivered Furniture constitutes part of its collateral.  To the extent that PNC takes this position, Ryder asserts that it's liens, whether common law, statutory, equitable, or otherwise are senior in priority to PNC's.

the Motion.

<u>**Summary of Relief Requested**</u>

12.    By this objection, Ryder requests that the Court deny the Motion.  Alternatively, if the Court is inclined to grant the Motion, Ryder requests that it its rights and interests be fully protected as describe below.  Ryder recognizes that the instant pleading is an "objection," and that some of the relief discussed below is more properly the subject of a formal motion. However, if the Court were to grant the Debtors' Motion without also ordering protection for Ryder's rights and interests, Ryder would then immediately move for relief including the items discussed below.  Accordingly, Ryder submits that raising all of these issues now, in this objection, is appropriate.

<u>**Analysis**</u>

A.    <u>**The Motion, as it presently stands, should be denied**</u>

13.    It should go without saying that a debtor may not require a vendor to provide services without compensation.  Yet, that is what the Debtors are presently proposing.  They propose to create a guarantied administrative insolvency, and run the case on Ryder's back.  For that reason, the Motion should be denied.

B.    **Ryder should be provided adequate protection, including immediate payment of all accrued administrative claims, and assurance of payment of all future** <u>**administrative claims**</u>

14.    Section 363(e) of the Bankruptcy Code provides in relevant part, "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

66034733\3 3692193/00592590

15.     Ryder should not be forced to continue providing services to the Debtors without adequate protection, which should include, at a minimum, immediate payment for the services that it has already provided post-petition, and assurance of full payment for its ongoing and future post-petition services.

16.     "Courts have discretion to determine when an administrative expense will be paid. In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors."  In re Garden Ridge Corp., 323 B.R. 136, 143 (Bankr. D. Del. 2005).

17.     Unlike the expenses in the Debtors' budget, the administrative expenses that Ryder is incurring will likely not be paid in full (and possibly not at all) as these cases presently stand.  The outcome of the sale process is uncertain, and the Debtors are proposing to give their DIP lenders superpriority claims and liens.  Un-budgeted administrative expense claims have no assurance at all that they will ever be paid.  This is an untenable position for Ryder.

18.     The only true remedy for this discrimination against Ryder is an award of immediate payment in full of its accrued administrative claims, and a requirement that the Debtors pay all of Ryder's future administrative claims.  Without this remedy, Ryder – in contrast to the vendors in the Debtors' budget – will find itself without any assurance of payment for its post-petition services.

**C.     The Debtors should be compelled to assume or reject the Services Agreement**

19.     Pursuant to 11 U.S.C. §365(d)(2), "the court, on the request of any party to [an executory] contract or lease, may order the trustee [or debtor] to determine within a specified period of time whether to assume or reject such contract or lease."  When presented with a request for an order compelling a debtor to determine within a specified time period whether to assume or reject a contract, "the court must balance the interests of the contracting party against

the interests of the debtor and its estate." In re Physician Health Corp., 262 B.R. 290, 292

(Bankr. D. Del. 2001). "What constitutes a reasonable time is left to the bankruptcy court's

discretion in light of the circumstances of the particular case." In re G-I Holdings, Inc., 308 B.R.

196, 213 (Bankr. D.N.J. 2004).

20.     Factors that courts have considered in evaluating the facts and circumstances of

cases include:

> a. the nature of the interests at stake;
>
> b. the balance of the hurt to the litigants;
>
> c. the good to be achieved;
>
> d. the safeguards afforded to the litigants;
>
> e. whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary;
>
> f. the debtor's failure or ability to satisfy post-petition obligations;
>
> g. the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;
>
> h. the importance of the contract to the debtor's business and reorganization;
>
> i. whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization;
>
> j. whether there is a need for judicial determination as to whether an executory contract exists;
>
> k. whether exclusivity has been terminated; and
>
> l. above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

In re Hawker Beechcraft, Inc., 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (quoting In re

Adelphia Commc'ns Corp., 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003)).

66034733\3 3692193/00592590

21.     The factors applicable under the present circumstances favor the Court's requiring the Debtors to immediately assume or reject the Services Agreement in the event that they fail to provide full payment for Ryder's post-petition services.

22.     First, these Debtors are not reorganizing.  They have already filed a motion to sell substantially all of their assets.   Accordingly, all of the factors related to the notion of "rehabilitation" or "reorganization" cut against the Debtors having limitless time within which to decide whether to assume or reject the Services agreement.  The Services Agreement is not needed for a reorganization, because no reorganization will ever take place.

23.     Next, as described above, Ryder has no assurance that its administrative claims will ever be satisfied in these cases, with the outcome of the Debtors' sale process uncertain, and a superpriority administrative claim in favor of the DIP lenders potentially ahead of them.  The ongoing harm to Ryder is significant, and – in the absence of the Debtor's immediate payment of all accrued administrative claims and assurance of payment of future administrative claims – irreparable.

24.     Ryder recognizes that the Debtors are attempting to sell their business as a going concern, and that the Services Agreement may be needed for the business to remain a going concern until the sale.  However, this consideration does not mean that Ryder must provide its services "for free."

25.     If the Debtors elect not to make their contractually required payments to Ryder going forward, and are not inclined to assume the Services Agreement, then Ryder should, in fairness, be permitted to escape from its present state of involuntary servitude by having the Services Agreement rejected (if not terminated should the Court grant Ryder stay relief to do so).

26.     Accordingly, in the event that the Court does not require the Debtors to immediately pay Ryder's accrued administrative expense claim and provide assurance that they will pay Ryder's future administrative claims, Ryder submits that the Court should compel the Debtors to either assume or reject the Services Agreement immediately.

D.      **Relief from stay to terminate the Services Agreement**

27.     Pursuant to 11 U.S.C. §362(d), "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." "Cause" is not defined in the Bankruptcy Code and has been interpreted as a flexible concept requiring a "case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." In re SCO Grp., Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing Baldino v. Wilson (In re Wilson), 116 F.3d 87, 90-1 (3d Cir. 1997)). "[I]n resolving motions for relief for cause from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 152 B.R. 420, 424 (D. Del. 1993).

28.     Courts have found that a debtor's failure to make required post-petition payments under executory contracts constitutes sufficient cause for allowing the counterparty relief from the automatic stay to exercise contractual remedies, including cancellation. See, e.g., Enodis Corp. v. Wausau Ins. Co. (In re Consol. Indus. Corp.), 330 B.R. 227, 232-4 (Bankr. N.D. Ind. 2001) (awarding party relief from stay to cancel debtor's insurance policies where debtor had failed to pay its reimbursement obligations); Jones v. Money Store, Inc. (In re Jones), 284 B.R.

92, 98 (Bankr. E.D. Pa. 2002) ("Failure to make post-petition payments to a mortgagee has been found to be sufficient cause for relief from the stay under Section 362(d)(1)").

29.     The Services Agreement is still in force, yet the Debtors have omitted Ryder from their budget, evidencing an intent to ignore their obligation to pay Ryder's ongoing charges, and seemingly run these cases on Ryder's back.   On the other hand, Ryder has been, and is still, continuing to perform its contractual obligations to the Debtors.

30.     If the present imbalance were allowed to continue, Ryder would obviously be denied the benefit of its bargain under the Services Agreement, and the Debtors would have effectively obtained for themselves Ryder's services "for free."  Ryder should not be forced to fund these bankruptcy cases by giving away its services for nothing.

31.     Under these circumstances, Ryder respectfully submits that "cause" exists for its obtaining relief from the automatic stay to allow it to exercise its contractual remedies under the Services Agreement, including to terminate it for non payment of charges.

**E.**     **Ryder's lien rights must be respected and enforced**

32.     As described above, Ryder has liens on all Undelivered Furniture in its possession.  Ryder will not, and cannot be compelled to, relinquish its liens – including by relinquishing possession – on any given item of Undelivered Furniture unless and until it has received full payment of all of its outstanding charges secured by its liens on that item.

**F.**    <u>**Conclusion**</u>

33.    Ryder is extremely sympathetic to the dilemma in which the end-customers find themselves, and, if assurances of full payment are provided and its rights are protected, Ryder is willing to work with the Debtors and the end-customers to deliver the Undelivered Furniture.[6]

<u>**Notice**</u>

34.    Ryder will serve this objection on the following parties: (i) the Office of the United States Trustee; (ii) the Debtors; (iii) PNC Bank; and (iv) all parties that have requested such notice pursuant to Bankruptcy Rule 2002 as of this date.  Ryder submits that service upon the Notice Parties is appropriate and sufficient under the circumstances, and will provide adequate notice to parties in interest.

WHEREFORE, Ryder respectfully requests that the Court enter an order denying the Motion, and granting any other relief that the Court may deem appropriate.

Dated:  September 25, 2023                    COZEN O'CONNOR

                                                    /s/ John T. Carroll, III
                                                    John T. Carroll, III (No. 4060)
                                                    Simon E. Fraser (No. 5335)
                                                    1201 N. Market Street, Suite 1001
                                                    Wilmington, DE  19801
                                                    Telephone:  (302) 295-2000
                                                    Facsimile:  (302) 295-2013
                                                    jcarroll@cozen.com
                                                    sfraser@cozen.com

                                                    *Counsel to Ryder Last Mile, Inc.*

---

[6] With reference to the Debtors' proposed Merchandise Retrieval Process described in the Motion, Ryder believes that a protocol under which it arranges for delivery of goods to the end-customers would be advisable, as opposed to one under which the end-customers themselves travel to Ryder's warehouses to collect their goods themselves.  The warehouses are generally not designed for in-person interaction with end-customers, and numerous logistical difficulties may result, as well as perhaps safety concerns.  Ryder reserves all rights in this regard.