## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE MITCHELL GOLD CO., LLC, et al.,[1] | ) | Chapter 11 |
| | ) | |
| Debtors. | ) | Case No. 23-11385 (LSS) |
| | ) | |
| | ) | **Docket No. 27** |
| | ) | |

**OBJECTION OF FURNITURE USA DISTRIBUTION INC. TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO HONOR CERTAIN CUSTOMER PRACTICES AND AUTHORIZE DEVELOPING THE MERCHANDISE RETRIEVAL PROCESS, (II) AFTER TITLE IS DETERMINED, GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY, AND (III) <u>GRANTING RELATED RELIEF</u>**

Furniture USA Distribution Inc. ("<u>Furniture USA</u>") objects to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor Certain Customer Practices and Authorize Developing the Merchandise Retrieval Process, (II) After Title is Determined, Granting Limited Relief From the Automatic Stay, and (III) Granting Related Relief* [D.I. 27] (the "<u>Motion</u>"),[2] and states in support of this objection[3]:

### <u>BACKGROUND</u>

1.      Beginning in November 2021, and continuing up to present time, Furniture USA and its affiliates West Express Inc. and Star Delivery Inc., have provided warehouse storage and white glove delivery services to the Debtors pursuant to the terms of a Freight Forwarder and Carrier Agency Agreement, as amended on June 30, 2023, the ("<u>Delivery Services Agreement</u>").

---

[1] The Debtors in these chapter 11 cases, along with the Debtors' federal tax identification numbers are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). The Debtors' addresses are, respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417, Little Rock, Arkansas 72203.

[2] Capitalized terms not otherwise defined in this Objection shall have the meanings given in the Motion.

[3] Furniture USA recognized that the objection deadline was set for September 25, at 4:00 p.m., but it did not retain undersigned counsel until right before the objection deadline and it needed time to formulate the objection.

2.      Pursuant to the Delivery Services Agreement, among other things, Furniture USA stores goods from the Debtors at its warehouse facilities for ultimate delivery to the Debtors' end-customers, including without limitation Finished Products, and then delivers them to the Debtors' end customers (all such goods, the "Furniture Products"). Furniture USA's storage and delivery charges are typically paid by the end-customer to the Debtors, and the payments are then forwarded by the Debtors to Furniture USA. Under the Delivery Services Agreement, responsibility for payment of Furniture USA's charges lies with the Debtors, as opposed to the end-customers.

3.      Furniture USA is presently storing over 1,317 separate Furniture Products, for delivery to approximately 475 of the Debtors' end-customers, in Furniture USA warehouses all over North Carolina (collectively, and including any other Furniture Products that may come into Furniture USA's possession, the "Undelivered Furniture"). The aggregate storage charges for the Undelivered Furniture are presently accruing at a total of $5,268 per day ($4/piece/day). Furniture USA estimates that its charges for delivering all of the Undelivered Furniture in its possession to the applicable end-customers would total approximately $265,652.53, not including storage fees. Under the laws applicable to the Undelivered Furniture and Furniture USA's warehouses, Furniture USA possesses senior liens on all Undelivered Furniture, securing all applicable outstanding charges, including without limitation charges for storage and delivery (collectively, the "Possessory Liens").[4]

4.      With respect to any given piece of Undelivered Furniture in its possession, Furniture USA requires payment of all outstanding charges, including without limitation for

---

[4] Furniture USA's warehouses at which Furniture Products are stored are located in North Carolina, and their end-customers are located in various states. Furniture USA intends to assert all of its lien rights under all applicable law to the fullest extent possible, whether common law, statutory, equitable, or otherwise. The term "Possessory Liens" shall include all applicable liens, under the laws of all applicable jurisdictions, to the fullest possible extent. Furniture USA reserves all rights under all applicable law with respect to its lien rights.

storage and delivery (the "Undelivered Furniture Charges"), before it can release its applicable liens and turn over possession to any third party (including without limitation the end-customer). To date, Furniture USA has not received payment of any Undelivered Furniture Charges. As of the date of this Motion, Furniture USA's storage charges alone for the Undelivered Furniture total approximately $158,040, as of September 26, 2023, ($5,268 per day since Debtors' petition date), and these storage charges are increasing daily.

5.      In addition to the Undelivered Furniture Charges, as of the Petition Date, the Debtors owe Furniture USA at least $440,499.39 in unpaid storage and delivery charges on account on Furniture Products that Furniture USA has previously stored, and has already delivered, to the Debtors' end-customers,  (the "Delivered Furniture Charges"). Furniture USA is informed that most, if not all, of the end-customers have already paid the Debtors for the Delivered Furniture Charges. However, the Debtors failed to turnover these payments to Furniture USA. Upon information and belief, PNC has since swept all of the funds from these payments, and presently has them in its possession.

6.      Furniture USA has relinquished possession of these Furniture Products to the end-customers in reliance on the Debtors' fulfilling their duty to send the end-customers' payments for the associated charges to Furniture USA. If Furniture USA had known that the Debtors would instead retain these funds for themselves – and that PNC would then sweep these funds – Furniture USA would not have released possession of these Furniture Products.

7.      Because these funds were earmarked for Furniture USA from the moment they came into the Debtors' possession with knowledge of the Debtors and presumably PNC, Furniture USA asserts that they were – and still are – impressed with a constructive trust and equitable lien

for Furniture USA's benefit.[5]  In addition to its Possessory Liens, Furniture USA asserts an equitable lien on all Furniture Products of any kind in its possession, securing payment of the Delivered Furniture Charges.[6]

### DEBTORS' MOTION

8.    The Motion contemplates that those of the end-customers who wish to retrieve their Furniture Products will pay "the cost of shipping" or "any associated costs." *See* Motion at ¶17. The Motion makes no mention of storage charges, and ignores the fact that, in all  likelihood, only a portion of the end-customers for the Undelivered Products will avail themselves of the Merchandise Retrieval Process. What the Debtors' Motion is silent on the issue of what they expect to become of the unretrieved goods, or how they expect the associated storage charges to be paid.

9.    The Debtors themselves do not propose to pay any of Furniture USA's charges. In fact, Furniture USA's charges are not included in the budget attached to the Debtors' pending motion for authority to obtain post-petition financing and to use cash collateral. *See* Dkt. 28. Furthermore, the Debtors do not possess the wherewithal under current financing to pay Furniture USA's charges. This failure to fund is strange given that stated purpose of the financing is to preserve the goodwill and value of the Debtors' general intangibles.

10.    Despite having omitted Furniture USA from their Budget, the Debtors have not moved to reject the Delivery Services Agreement, and by all accounts appear to be asking Furniture USA to provide its services on an ongoing basis "for free." In other words, via operation of both

---

[5] Furniture USA reserves all rights to assert any other liens that it may possess under any applicable law with respect to the Delivered Furniture Charges.

[6] Furniture USA reserves all rights against PNC with respect to funds representing end-customer payments of Furniture USA's charges. In addition, it is unclear whether PNC will take the position that the Undelivered Furniture constitutes part of its collateral. To the extent that PNC takes this position, Furniture USA asserts that it's liens, whether common law, statutory, equitable, or otherwise are senior in priority to PNC's.

the Motion and their DIP financing motion, the Debtors have effectively built a guaranteed administrative insolvency into these cases.

11.     In order to avoid being pressed into a state of involuntary servitude, Furniture USA instead objects to the Motion.

## **RELEIF REQUESTED**

12.     Furniture USA, by this objection, requests that the Court deny the Motion. Alternatively, if the Court is inclined to grant the Motion, Furniture USA requests that it its rights and interests be fully protected as describe below. Furniture USA recognizes that the instant pleading is an "objection," and that some of the relief discussed below is more properly the subject of a formal motion. However, if the Court were to grant the Debtors' Motion without also ordering protection for Furniture USA's rights and interests, Furniture USA would then immediately move for relief including the items discussed below. Accordingly, Furniture USA submits that raising all of these issues now, in this objection, is appropriate.[7]

13.     A debtor may not require a vendor to provide services without compensation. Yet, that is what the Debtors are presently proposing. They propose to create a guaranteed administrative insolvency and run the case on Furniture USA's back. For that reason alone, the Motion should be denied.

14.     Furniture USA should be provided adequate protection, including immediate payment of all accrued administrative claims, and assurance of payment of all future administrative claims.  Section 363(e) of the Bankruptcy Code provides in relevant part, "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property

---

[7] Furniture USA acknowledges the similarities of this objection to the *Objection of Furniture USA Last Mile, Inc. to Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor Certain Customer Practices and Authorize Developing the Merchandise Retrieval Process, (II) After Title is Determined, Granting Limited Relief From the Automatic Stay, and (III) Granting Related Relief*, Dkt. No. 104.

used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."

15.    Furniture USA should not be forced to continue providing services to the Debtors without adequate protection, which should include, at a minimum, immediate payment for the services that it has already provided post-petition, and assurance of full payment for its ongoing and future post-petition services.

16.    "Courts have discretion to determine when an administrative expense will be paid. In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005).

17.    The administrative expenses that Furniture USA is incurring will, in all likelihood, not be paid in full (and possibly not at all) as these cases presently stand.  When contrasted with the expenses in the Debtors' budget, this treatment is untenable. The outcome of the sale process is uncertain, and the Debtors are proposing to give their DIP lenders superpriority claims and liens. Un-budgeted administrative expense claims have no assurance at all that they will ever be paid. This is an untenable position for Furniture USA.

18.    The only viable remedy for this unwarranted discrimination against Furniture USA is an award of immediate payment in full of its accrued administrative claims, and a requirement that the Debtors pay all of Furniture USA's future administrative claims. Without this remedy, Furniture USA will find itself without any assurance of payment for its post-petition services.

19.    The Debtors should be compelled to assume or reject the Delivery Services Agreement with Furniture USA.  Pursuant to 11 U.S.C. §365(d)(2), "the court, on the request of

any party to [an executory] contract or lease, may order the trustee [or debtor] to determine within a specified period of time whether to assume or reject such contract or lease." When presented with a request for an order compelling a debtor to determine within a specified time period whether to assume or reject a contract, "the court must balance the interests of the contracting party against the interests of the debtor and its estate." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001). "What constitutes a reasonable time is left to the bankruptcy court's discretion in light of the circumstances of the particular case." *In re G-I Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D.N.J. 2004).

20.    The factors that courts have considered in evaluating the facts and circumstances of cases include:

a. the nature of the interests at stake;

b. the balance of the hurt to the litigants;

c. the good to be achieved;

d. the safeguards afforded to the litigants;

e. whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary;

f. the debtor's failure or ability to satisfy post-petition obligations;

g. the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code;

h. the importance of the contract to the debtor's business and reorganization;

i. whether the debtor has sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan of reorganization;

j. whether there is a need for judicial determination as to whether an executory contract exists;

k. whether exclusivity has been terminated; and

l. above all, the broad purpose of Chapter 11, which is to permit successful rehabilitation of debtors.

*In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (quoting *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003)).

21.     The factors applicable under the present circumstances favor the Court's requiring the Debtors to immediately assume or reject the Delivery Services Agreement in the event that they fail to provide full payment for Furniture USA's post-petition services.

22.     First, these Debtors are not reorganizing. They have already filed a motion to sell substantially all of their assets. Accordingly, all of the factors related to the notion of "rehabilitation" or "reorganization" cut against the Debtors having limitless time within which to decide whether to assume or reject the Services agreement. The Delivery Services Agreement is not needed for a reorganization, because no reorganization will ever take place.

23.     Next, as described above, Furniture USA has no assurance that its administrative claims will ever be satisfied in these cases, with the outcome of the Debtors' sale process uncertain, and a superpriority administrative claim in favor of the DIP lenders potentially ahead of them. The ongoing harm to Furniture USA is significant, and – in the absence of the Debtor's immediate payment of all accrued administrative claims and assurance of payment of future administrative claims – irreparable.

24.     Furniture USA recognizes that the Debtors are attempting to sell their business as a going concern, and that the Delivery Services Agreement may be needed for the business to remain a going concern until the sale. However, this consideration does not mean that Furniture USA must provide its services "for free."

25.     If the Debtors elect not to make their contractually required payments to Furniture USA going forward, and are not inclined to assume the Delivery Services Agreement, then Furniture USA should, in fairness, be permitted to escape from its present state of involuntary

servitude by having the Delivery Services Agreement rejected (if not terminated should the Court grant Furniture USA stay relief to do so).

26.     Accordingly, in the event that the Court does not require the Debtors to immediately pay Furniture USA's accrued administrative expense claim and provide assurance that they will pay Furniture USA's future administrative claims, Furniture USA submits that the Court should compel the Debtors to either assume or reject the Delivery Services Agreement immediately.

## ALTERNATIVE RELIEF

27.     Pursuant to 11 U.S.C. §362(d), "On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." "Cause" is not defined in the Bankruptcy Code and has been interpreted as a flexible concept requiring a "case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90-1 (3d Cir. 1997)). "[I]n resolving motions for relief for cause from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.*), 152 B.R. 420, 424 (D. Del. 1993).

28.     Courts have found that a debtor's failure to make required post-petition payments under executory contracts constitutes sufficient cause for allowing the counterparty relief from the automatic stay to exercise contractual remedies, including cancellation. *See, e.g., Enodis Corp. v. Wausau Ins. Co. (In re Consol. Indus. Corp.*), 330 B.R. 227, 232-4 (Bankr. N.D. Ind. 2001) (awarding party relief from stay to cancel debtor's insurance policies where debtor had failed to

pay its reimbursement obligations); *Jones v. Money Store, Inc. (In re Jones)*, 284 B.R. 92, 98 (Bankr. E.D. Pa. 2002) ("Failure to make post-petition payments to a mortgagee has been found to be sufficient cause for relief from the stay under Section 362(d)(1)").

29.     The Delivery Services Agreement is still in force, yet the Debtors have omitted Furniture USA from their budget, evidencing an intent to ignore their obligation to pay Furniture USA's ongoing charges, and seemingly run these cases on Furniture USA's back. On the other hand, Furniture USA has been, and is still, continuing to perform its contractual obligations to the Debtors.

30.     If the present imbalance were allowed to continue, Furniture USA would obviously be denied the benefit of its bargain under the Delivery Services Agreement, and the Debtors would have effectively obtained for themselves Furniture USA's services "for free." Furniture USA should not be forced to fund these bankruptcy cases by giving away its services for nothing.

31.     Under these circumstances, Furniture USA respectfully submits that "cause" exists for its obtaining relief from the automatic stay to allow it to exercise its contractual remedies under the Delivery Services Agreement, including to terminate it for nonpayment of charges for its services.

32.     As described above, Furniture USA has liens on all Undelivered Furniture in its possession. Furniture USA will not, and cannot be compelled to, relinquish its liens – including by relinquishing possession – on any given item of Undelivered Furniture unless and until it has received full payment of all of its outstanding charges secured by its liens on that item.

## **CONCLUSION**

33.  Furniture USA, like Furniture USA is extremely sympathetic to the dilemma in which the end-customers find themselves, and, if assurances of full payment are provided and its rights

are protected, Furniture USA is willing to work with the Debtors and the end-customers to deliver the Undelivered Furniture.[8]

**NOTICE**

34.    Furniture USA will serve this objection on the following parties: (i) the Office of the United States Trustee; (ii) the Debtors; (iii) PNC Bank; and (iv) all parties that have requested such notice pursuant to Bankruptcy Rule 2002 as of this date. Furniture USA submits that service upon the Notice Parties is appropriate and sufficient under the circumstances and will provide adequate notice to parties in interest.

WHEREFORE, Furniture USA respectfully requests that the Court enter an order denying the Motion and granting any other relief that the Court may deem appropriate.

Dated:  September 26, 2023                         HOGAN♦McDANIEL

                                                   */s/Daniel K. Hogan*
                                                   Daniel K. Hogan (DE #2814)
                                                   Daniel C. Kerrick (DE # 5027)
                                                   1311 Delaware Avenue, Suite 1
                                                   Wilmington, DE 19806
                                                   Tel: (302) 656-7540
                                                   Email:  dkhogan@dkhogan.com

                                                   *Counsel for Furniture USA Distribution Inc.*

---

[8] With reference to the Debtors' proposed Merchandise Retrieval Process described in the Motion, Furniture USA believes that a protocol under which it arranges for delivery of goods to the end-customers would be advisable, as opposed to one under which the end-customers themselves travel to Furniture USA's warehouses to collect their goods themselves. The warehouses are generally not designed for in-person interaction with end-customers, and numerous logistical difficulties may result, as well as perhaps safety concerns. Furniture USA reserves all rights in this regard.