IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| THE MITCHELL GOLD CO., LLC, *et al*.,[1] | Case No. 23-11385 (LSS) |
| Debtors. | (Jointly Administered) |
| | Hearing Date: October 2, 2023 at 2:00 p.m. (ET)<br>Objection Deadline: September 25, 2023 at 4:00 p.m. (ET)[2]<br>Re: D.I. 27 |

**OBJECTION OF NEED IT NOW DELIVERS, LLC AND ITS SUBSIDIARIES
TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING THE DEBTORS TO HONOR CERTAIN CUSTOMER PRACTICES
AND AUTHORIZE DEVELOPING THE MERCHANDISE RETRIEVAL PROCESS,
(II) AFTER TITLE IS DETERMINED, GRANTING LIMITED RELIEF FROM THE
AUTOMATIC STAY, AND (III) GRANTING RELATED RELIEF**

Need It Now Delivers, LLC, Fastmile Delivers LLC d/b/a Need It Now, Show Me Delivers LLC d/b/a Need It Now, Need It Now Courier of Maryland, LLC d/b/a Maryland Messenger Service, and Hillside Logistics, LLC d/b/a Veterans Distribution of Chicago (collectively, "Need It Now"), by and through undersigned counsel, files this objection (the "Objection") to *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Honor Certain Customer Practices and Authorize Developing the Merchandise Retrieval Process, (II) After Title is Determined, Granting Limited Relief from the Automatic Stay, and (III) Granting Related Relief* [D.I. 27] (the "Motion"), and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, along with the Debtors' federal tax identification numbers are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). The Debtors' addresses are, respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417, Little Rock, Arkansas 72203.

[2] Debtors' counsel agreed to extend the objection deadline for Need It Now until Wednesday, September 27, 2023.

51099024.3

**BACKGROUND**

I. **Need It Now's Relationship with the Debtors**

1. On August 31, 2023, debtor SG-TMGC, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. On September 6, 2023, Debtor The Mitchell Gold Co., LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. The Debtors continue to manage their business and their assets as Debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. Need It Now provided the Debtors with various delivery and warehousing services both pre- and post-petition pursuant to certain agreements (the "Agreements"). Under the terms of the Agreements, Need It Now, among other responsibilities, stores goods for the Debtors at its warehouse facilities for eventual delivery to the Debtors' end-customers. This includes, but is not limited to, finished products and products that are in Need It Now's possession because they were returned by the Debtors' end-customers (all such goods, the "Furniture Products"). The Furniture Products are usually delivered to the Debtors' end-customers by Need It Now.

3. Need It Now's storage and delivery charges are typically paid by the end-customer to the Debtors. Under the terms of the Agreements, the Debtors pay Need It Now based on agreed-upon rates, which may not necessarily reflect the amounts paid by the end-customers. Nevertheless, the responsibility for the payment of Need It Now's charges rests *solely* with the Debtors, not with the end-customers.

4. Need It Now is currently storing approximately 3,627 separate Furniture Products in its warehouses located in Oak Brook, IL; Chicago, IL; Baltimore, MD; Atlanta, GA; Denver, CO; and Los Angeles, CA (collectively, and including any other Furniture Products that may come into Need It Now's possession, the "Undelivered Furniture").

5. The aggregate storage charges for the Undelivered Furniture vary by location and presently range from $427.40 to $1,223.01 per day. Historically, the monthly storage billing has ranged from $9,264.00 to $37,200.00. These storage charges continue to accrue post-petition. Need It Now is diligently working to accurately invoice the owed amounts but believes them to be approximately $50,000.00. Need It Now unequivocally reserves the right to clarify or supplement this number.

6. At this time, Need It Now cannot estimate its charges for delivering all of the Undelivered Furniture in its possession since the cost varies by mileage, weight, and other factors. Under the laws applicable to the Undelivered Furniture and Need It Now's warehouses, Need It Now possesses senior liens on all Undelivered Furniture, securing all applicable outstanding charges, including without limitation charges for storage and delivery (collectively, the "Possessory Liens").

7. With respect to any given piece of Undelivered Furniture in its possession, Need It Now requires payment of all outstanding charges, including without limitation for storage and delivery (the "Undelivered Furniture Charges"), before it can release its applicable liens and turn over possession to any third party (including without limitation the end-customer). To date, Need It Now has not received payment of any Undelivered Furniture Charges.

8. In addition to the Undelivered Furniture Charges, as of the Petition Date (i.e., pre-petition), the Debtors owe Need It Now at least $801,346.52 in unpaid storage and delivery charges on account of Furniture Products that Need It Now has previously stored, and has already delivered, to the Debtors' end-customers, (the "Delivered Furniture Charges").

9. Need It Now is informed that most, if not all, of the end-customers have already paid the Debtors for the Delivered Furniture Charges. However, the Debtors failed to turnover

3

51099024.3

these payments to Need It Now. Based upon information and belief, PNC has since swept all of the funds from these payments, and presently has them in its possession.

10. Need It Now has relinquished possession of these Furniture Products to the end-customers in reliance on the Debtors' fulfilling their duty to send the end-customers' payments for the associated charges to Need It Now. If Need It Now had known that the Debtors would instead retain these funds for themselves—and that PNC Bank would then sweep these funds—Need It Now would not have released possession of these Furniture Products.

11. Because these funds were earmarked for Need It Now from the moment they came into the Debtors' possession with knowledge of the Debtors and presumably PNC Bank, Need It Now asserts that they were—and still are—impressed with a constructive trust and equitable lien for Need It Now's benefit. In addition to its Possessory Liens, Need It Now asserts an equitable lien on all Furniture Products of any kind in its possession, securing payment of the Delivered Furniture Charges.

## II. **Debtors' Motion**

12. Through the Motion, the Debtors themselves do not propose to pay any of Need It Now's charges, which is contrary to the Agreements. In fact, Need It Now's charges are not included in the budget attached to the Debtors' pending motion for authority to obtain post-petition financing and to use cash collateral. See D.I. 28 (the "DIP Financing Motion").

13. Based on a review of the Debtors' filings, it appears that the Debtors do not have the current financing to cover Need It Now's charges. This inconsistency contrasts with the Debtors' stated purpose for obtaining financing, which was to preserve the goodwill and value of their general intangibles.

14. Despite omitting Need It Now from their budget, the Debtors have not moved to reject the Agreements and, by all accounts, appear to be asking Need It Now to provide its services on an ongoing basis without compensation. In other words, via operation of both the Motion and their DIP Financing Motion, the Debtors have effectively built a guaranteed administrative insolvency into these cases.

15. This situation is untenable. To avoid being pressed into a state of involuntary servitude by the Debtors, Need It Now objects to the Motion.

16. Should the Court be inclined to grant the relief sought in the Motion, Need It Now requests clarification of the Merchandise Retrieval Language (as defined below) concerning the process by which end-customers obtain the Undelivered Furniture and payment for such services.

## **OBJECTION AND RELIEF REQUESTED**

17. Need It Now, by this Objection, requests that the Court deny the Motion. Alternatively, if the Court is inclined to grant the Motion, Need It Now requests that its rights and interests be fully protected as described below.

18. Need It Now recognizes that the instant pleading is an "objection," and that some of the relief discussed below is more properly the subject of a formal motion.[3] However, if the Court were to grant the Debtors' Motion without also ordering protection for Need It Now's rights and interests, Need It Now would then immediately move for relief. Accordingly, Need It Now submits that raising all of these issues now, in this Objection, is appropriate.

---

[3] Notably, other parties in similar situations, including Ryder Last Mile, Inc. at D.I. 104 and Furniture USA Distribution Inc. at D.I. 115, have also filed objections to the Motion, seeking relief almost identical to that sought in this Objection.

51099024.3

### III. The Debtors Should Be Required to Provide Adequate Protection, Including Payment of All Accrued Administrative Claims, Before Any Additional Work Is Performed

19. A debtor may not require a vendor to provide services without compensation. Yet, that is what the Debtors are presently proposing in the Motion. The Debtors propose to create a guaranteed administrative insolvency and run the case on Need It Now's back. For that reason alone, the Motion should be denied.

20. Need It Now should be provided adequate protection, including immediate payment of all accrued administrative claims, and assurance of payment of all future administrative claims.

21. Section 363(e) of the Bankruptcy Code provides, in relevant part, "[n]otwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).

22. Need It Now should not be forced to continue providing services to the Debtors without adequate protection, which should include, at a minimum, immediate payment for the services that it has already provided post-petition, and assurance of full payment for its ongoing and future post-petition services.

23. "Courts have discretion to determine when an administrative expense will be paid. In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr. D. Del. 2005).

24. The administrative expenses that Need It Now is incurring will, in all likelihood, not be paid in full (and possibly not at all) as these cases presently stand. When contrasted with

the expenses in the Debtors' budget, this treatment is untenable. The outcome of the sale process is uncertain, and the Debtors are proposing to give their DIP lenders superpriority claims and liens. Un-budgeted administrative expense claims have no assurance at all that they will ever be paid. This is an untenable position for Need It Now.

25. The only viable remedy for this unwarranted discrimination against Need It Now is an award of immediate payment in full of its accrued administrative claims, and a requirement that the Debtors pay all of Need It Now's future administrative claims. Without this remedy, Need It Now will find itself without any assurance of payment for its post-petition services.

**IV.     The Debtors Should Be Required to Assume or Reject the Agreements if Adequate Protection Cannot Be Afforded**

26. The Debtors should be compelled to assume or reject the Agreements with Need It Now. Pursuant to 11 U.S.C. §365(d)(2), "the court, on the request of any party to [an executory] contract or lease, may order the trustee [or debtor] to determine within a specified period of time whether to assume or reject such contract or lease." When presented with a request for an order compelling a debtor to determine within a specified time period whether to assume or reject a contract, "the court must balance the interests of the contracting party against the interests of the debtor and its estate." *In re Physician Health Corp.*, 262 B.R. 290, 292 (Bankr. D. Del. 2001). The factors that courts have considered in evaluating the facts and circumstances of cases include:

27. Several factors are considered by courts when evaluating the facts and circumstances of cases, including the nature of the interests at stake; the balance of the harm to the litigants; the potential benefits to be achieved; the safeguards afforded to the litigants; and whether the action to be taken aligns with Congress' scheme. *In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (citation omitted). Additionally, consideration is given to the debtor's ability to satisfy post-petition obligations; the damage that the non-debtor will suffer beyond the

7
51099024.3

compensation available under the Bankruptcy Code; the importance of the contract to the debtor's business and reorganization efforts; and, above all, the overarching purpose of Chapter 11, which is to permit successful rehabilitation of Debtors. *Id*.

28. The factors applicable under the present circumstances favor the Court's requiring the Debtors to immediately assume or reject the Agreements in the event that they fail to provide full payment for Need It Now's post-petition services.

29. The Debtors own filings suggest that they are not reorganizing since they have already filed a motion to sell substantially all of their assets. All the factors related to the notion of "rehabilitation" or "reorganization" cut against the Debtors having limitless time within which to decide whether to assume or reject the Agreements. No reorganization will ever take place, rendering the Agreements are unnecessary for such purposes.

30. As mentioned, Need It Now has no assurance that its administrative claims will ever be satisfied in these cases, posing significant and – in the absence of the Debtor's immediate payment of all accrued administrative claims and assurance of payment of future administrative claims – irreparable harm to Need It Now.

31. Need It Now acknowledges the Debtors' attempts to sell their business as a going concern, but this consideration does not obligate Need It Now to provide its services gratuitously.

32. If the Debtors elect not to honor their contractual obligations to Need It Now going forward and are not inclined to assume the Agreements, then fairness dictates that Need It Now be permitted to have the Agreements rejected. This holds true especially if the Court grants Need It Now stay relief to do so.

33. Accordingly, if the Court does not require the Debtors to immediately settle Need It Now's accrued administrative expense claim and assure payment of future administrative claims,

Need It Now submits that the Court should compel the Debtors to either assume or reject the Agreements promptly.

V. **In the Alternative, Cause Exists to Lift the Automatic Stay to Allow for the Termination of the Agreements**

34. Pursuant to 11 U.S.C. §362(d), "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay – for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." "Cause" is not defined in the Bankruptcy Code and has been interpreted as a flexible concept requiring a "case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay." *In re SCO Grp., Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007) (citing *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90-1 (3d Cir. 1997)). "[I]n resolving motions for relief for cause from the automatic stay courts generally consider the policies underlying the automatic stay in addition to the competing interests of the debtor and the movant." *Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993).

35. Courts have found that a debtor's failure to make required post-petition payments under executory contracts constitutes sufficient cause for allowing the counterparty relief from the automatic stay to exercise contractual remedies, including cancellation. *See, e.g., Enodis Corp. v. Wausau Ins. Co. (In re Consol. Indus. Corp.)*, 330 B.R. 227, 232-4 (Bankr. N.D. Ind. 2001) (awarding party relief from stay to cancel debtor's insurance policies where debtor had failed to pay its reimbursement obligations); *Jones v. Money Store, Inc. (In re Jones)*, 284 B.R. 92, 98 (Bankr. E.D. Pa. 2002) ("Failure to make post-petition payments to a mortgagee has been found to be sufficient cause for relief from the stay under Section 362(d)(1)").

36. The Agreements are still in force, yet the Debtors have omitted Need It Now from their budget, evidencing an intent to ignore their obligation to pay Need It Now's ongoing charges, and seemingly run these cases on Need It Now's back. On the other hand, Need It Now has been, and is still, continuing to perform its contractual obligations to the Debtors.

37. If the present imbalance were allowed to continue, Need It Now would obviously be denied the benefit of its bargain under the Agreements, and the Debtors would have effectively obtained for themselves Need It Now's services gratuitously. Need It Now should not be forced to fund these bankruptcy cases by giving away its services for nothing.

38. Accordingly, Need It Now respectfully submits that "cause" exists for its obtaining relief from the automatic stay to allow it to exercise its contractual remedies under the Agreements, including to terminate it for nonpayment of charges for its services.

39. As described above, Need It Now has liens on all Undelivered Furniture in its possession. Need It Now will not, and cannot be compelled to, relinquish its liens—including by relinquishing possession—on any given item of Undelivered Furniture unless and until it has received full payment of all of its outstanding charges secured by its liens on that item.

**VI.   In the Alternative, the Merchandise Retrieval Language Should Be Clarified**

40. Should the Court be inclined to grant the relief sought underlying Motion, Need It Now requests clarification of the proposed Merchandise Retrieval Process, as described in paragraph 17 of the Motion (the "Merchandise Retrieval Language"):

> In order to honor their Customer Practices, the Debtors seek—following a determination of title or rights in customers where there are finished, identified products—to allow (i) Customers who paid in full for Retail Products and (ii) Customers that sent Customer-Owned Material to the Debtors to retrieve their merchandise by either (a) assuming the cost of shipping themselves, (b) retrieving their designated merchandise directly from the Debtors' various facilities or the appropriate 3PL or North Carolina Locations with

any associated costs paid for by the Customer, including, for the avoidance of doubt, and costs of any necessary additional labor or independent contractors, or (c) another method as may be authorized based on adequate funding (this process, the "Merchandise Retrieval Process").

41. The Merchandise Retrieval Language is ambiguous concerning the payment method that customers would use to remunerate companies like Need It Now. It suggests that end-customers wishing to retrieve their merchandise will cover "the cost of shipping" or "any associated costs." See Merchandise Retrieval Language. However, the Merchandise Retrieval Language fails to provide further specifics regarding the process. This lack of clarity is unacceptable and places Need It Now in a precarious position where, for instance, customers might pay the delivery fee and subsequently dispute the charge with their respective credit card companies. Consequently, Need It Now requires clarification and proposes that payments for deliveries be made only via certified checks to mitigate such risks

42. The Merchandise Retrieval Language also suggests that customers "retriev[e] their designated merchandise directly from the Debtors' various facilities," which is problematic. Need It Now posits that a protocol where it oversees delivery to end-customers is preferable to one where end-customers visit Need It Now's warehouses to collect their respective merchandise. These warehouses are not intended for in-person interactions, leading to potential logistical issues and safety concerns. Thus, scheduling deliveries is essential. Need It Now unequivocally reserves all rights in this matter.

43. The Merchandise Retrieval Language also lacks provisions specifying who would be responsible for issues related to product quality or delivery. Clarification is imperative on the protocol for addressing such issues. It must be explicitly stated in the Merchandise Retrieval Language that such concerns are to be addressed by the Debtors, not by Need It Now.

## RESERVATION OF RIGHTS AND JOINDER

44. Need It Now hereby reserves the right to supplement this Objection as it deems necessary and appropriate. This includes the right to make additional arguments at any hearing on the Motion. Need it Now likewise joins in other objections to the Motion, including that certain objection filed by Ryder Last Mile, Inc. at D.I. 104, and Furniture USA Distribution Inc., at D.I. 115, and that are not inconsistent with this Objection. Need It Now also reserves the right to affirmatively move to obtain relief sought in this Objection, if necessary.

## NOTICE

45. Need It Now will serve this Objection on the following parties: (i) the Office of the United States Trustee; (ii) the Debtors; (iii) PNC Bank; (iv) counsel for the Official Committee of Unsecured Creditors and (v) all parties that have requested such notice pursuant to Bankruptcy Rule 2002 as of this date. Need It Now submits that service upon the Notice Parties is appropriate and sufficient under the circumstances, and will provide adequate notice to parties in interest.

## CONCLUSION

46. For the reasons set forth herein, the relief sought in the Motion should be denied as set forth herein.

| | |
|---|---|
| Dated: September 27, 2023<br>Wilmington, Delaware | **SAUL EWING LLP**<br><br>*/s/ Evan T. Miller*<br>Evan T. Miller (DE Bar No. 5364)<br>1201 N. Market Street, Suite 2300<br>P.O. Box 1266<br>Wilmington, DE 19899<br>Telephone: (302) 421-6800<br>E-mail: evan.miller@saul.com<br><br>*Attorneys for Need It Now Delivers, LLC, Fastmile Delivers LLC d/b/a Need It Now, Show Me Delivers LLC d/b/a Need It Now, Need It Now Courier of Maryland, LLC d/b/a Maryland Messenger Service, Hillside Logistics, LLC d/b/a Veterans Distribution of Chicago* |

51099024.3