## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| The Mitchell Gold Co., LLC, *et al.*,[1] | Case No. 23-11385 (LSS)<br>(Jointly Administered) |
| Debtors. | **Hearing Date:  October 2, 2023 at 2:00 p.m.** |
| | **Objections Due: September 25, 2023 at 4 p.m.**<br>**Extended for the U.S. Trustee to**<br>**September 27, 2023 at 4 p.m.**<br>Re: D.I. 28 & 82 |

**OBJECTION OF THE UNITED STATES TRUSTEE TO THE DEBTOR'S MOTION
FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING SECURED POST-
PETITION FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING USE OF
CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (III) SCHEDULING A
FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(C)**

Andrew R. Vara, United States Trustee for Regions Three and Nine ("U.S.

Trustee"), through his undersigned counsel, files this objection (the "Objection") to the *Debtor's*

*Motion for Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant*

*to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and*

*(III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* (the "Motion," D.I. 28),

and in support of that objection states:

## PRELIMINARY STATEMENT

1.     The U.S. Trustee objects to the release included within the proposed order,

whereby the Debtors will release (a) their equity holder, (b) each of the Debtors, (c) each of the

equity holders' and each of the Debtors' current and former parents, subsidiaries and affiliates,

---

[1] The Debtors in these chapter 11 cases, along with the Debtors' federal tax identification numbers
are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). The Debtors' addresses are,
respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417,
Little Rock, Arkansas 72203.

and (d) all of the previous parties' current and former officers, directors, members, managers, employees, equity holders, successors and assigns. The order proposes to release all claims arising prior to the date of the Final DIP Order, and not simply those claims relating to the lending relationship. Further, there is no carve out for claims based on fraud, gross negligence or intentional misconduct.

2.    The release is purportedly granted not just by the Debtors, but also by "all those claiming by, through or under them including, without limitation, their estates and their current and former direct and indirect subsidiaries, and each such entity's current and former directors, officers, managers, members, equity holders, successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacities as such."

3.    As part of a debtor's motion to obtain post-petition financing from its lender, one might expect to see a release by the debtors of the lender for claims arising out of the lending relationship.   What is not expected, or justified, is for a DIP financing motion to include a release by a debtor of a long list of insiders, including the Debtors' own officers and directors and employees. Nor is it typical that the release of the lender would include claims that are not related to the lending relationship, rendered even more atypical when the lender is an insider.

4.    Provisions by which debtors release other debtors, their equity holder, affiliates and subsidiaries, as well as each of their directors and officers and employees, are sometimes included in a plan of reorganization or liquidation, on which creditors have the right to vote.  However, even when included in a plan, the debtor must show that such release meets the requirements set forth in *In re Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) with respect to each party which the debtor seeks to release.  The Motion does not address whether or

how the Debtors' releases of the many insiders meet the *Zenith/Master Mortgage* elements, and it is difficult to see how they could.

## JURISDICTION AND STANDING

5.      Under (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2), this Court has jurisdiction to hear and determine the Motion and this Objection.

6.      Pursuant to 28 U.S.C. § 586(a)(3), the U.S. Trustee is charged with administrative oversight of the bankruptcy system in this District.  Such oversight is part of the U. S. Trustee's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts.  *See United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that the U. S. Trustee has "public interest standing" under 11 U.S.C. § 307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

7.      Under 11 U.S.C. § 307, the U. S. Trustee has standing to be heard on the Motion and the issues raised by this Objection.

## BACKGROUND

8.      On August 31, 2023, Debtor SG-TMGG, LLC ("SG-TMGG") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Debtor The Mitchell Gold Co., LLC ("Mitchell Gold") filed its voluntary petition on September 6, 2023. The Debtors continue to operate their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

9.      On September 12, 2023, the Debtors filed the Motion.  D.I. 28. This Court entered an order granting interim relief on September 18, 2023. D.I. 82.

10.     On September 20, 2023, the U.S. Trustee appointed an official committee of unsecured creditors. D.I. 88.

11.     The Interim Order contains the following release, which is subject to final order:

> Effective upon entry of the Final Order and without prejudice to the ability of any Committee or any other party-in-interest in these Cases with standing to do so to initiate a challenge by the Challenge Deadline (as defined herein) in accordance with Paragraph 11(b) of this Interim Order, each of the Debtors, for and on behalf of themselves and all those claiming by, through or under them including, without limitation, their estates and their current and former direct and indirect subsidiaries, and each such entity's current and former directors, officers, managers, members, equity holders, successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacities as such (collectively, the "Releasing Parties"), hereby unconditionally and irrevocably releases, acquits, absolves, forever discharges and covenants not to sue the DIP Lender Parties, and their respective properties and assets, from any and all acts and omissions of the DIP Lender Parties, and from any and all claims, interests, causes of action, avoidance actions, counterclaims, defenses, setoffs, demands, controversies, suits, judgments, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, objections, legal proceedings, equitable proceedings, executions of any nature, type, or description and liabilities whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their estates, or such entities' successors or assigns, whether individually or collectively), which the Releasing Parties now have, may claim to have or may come to have against the Released Parties through the date of the Final DIP Order, at law or in equity, by statute or common law, in contract or in tort, including, without limitation, (a) any so-called "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all Case offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether liquidated or unliquidated, fixed or contingent, known or unknown, suspected or unsuspected, disputed or undisputed, whether arising at law or in equity, including any recharacterization, recoupment, subordination, disallowance, avoidance, challenge, or other claim or cause of action arising under or pursuant to section 105, chapter 5, or section 724(a) of the Bankruptcy Code or under other similar provisions of applicable state, federal,

or foreign laws, including without limitation, any right to assert any disgorgement or recovery, but excluding obligations of the DIP Lender under the DIP Credit Facility arising after the date of the Final DIP Order (collectively, the "Released Claims") provided that the release as to the Debtors' estates shall not be effective until expiration of a Challenge Period with no Challenge having been asserted. This subparagraph is in addition to and shall not in any way limit any other release, covenant not to sue, or waiver by the Releasing Parties in favor of the Released Parties. Notwithstanding the releases and covenants in favor of the Released Parties contained above, such releases and covenants in favor of the Released Parties shall be deemed acknowledged and reaffirmed once effective as set forth above by the Debtors each time there is an advance of funds, extension of credit, or financial accommodation under this DIP Term Sheet, an Interim DIP Order or the DIP Facility Documents. As of the date hereof, there exist no claims or causes of action against the DIP Lenders with respect to, in connection with, related to, or arising from this DIP Term Sheet, an Interim DIP Order or the DIP Facility Documents that may be asserted by the Debtors or, to the Debtors' knowledge, any other person or entity. Notwithstanding the foregoing, nothing contained in this subparagraph shall affect the rights of any Committee or any other party in interest with standing to timely bring a cause of action asserting Released Claim(s) (a "Challenge") solely as permitted in the other subparagraphs of this paragraph. Nothing in this Interim Order shall confer or deny standing upon any Committee appointed in these Cases or any other person or entity to bring, assert, commence, continue, prosecute or litigate a Challenge against any DIP Lender Parties.

D.I. 82, ⁋ 11(a).

12.     The Interim DIP Order defines DIP Lender Parties as "The Stephens Group, LLC, its current and former parents, subsidiaries and affiliates (including Comfort Retail Holdings, Inc. and SG-Comfort), and each such entity's current and former officers, directors, members, managers, employees, equity holders, successors and assigns." *Id.* at ⁋ 10.

13.     The Stephens Group, LLC, along with the Sorrells Joint Revocable Trust, are the equity holders of SG-TMGC. Mitchell Gold is a wholly owned subsidiary of SG-TMGC. *Declaration of Dalton Edgecomb in Support of Chapter 11 Petitions and First Day Motions* (D.I. 18), ⁋ 14. SG-TMGC is the successor in interest to Comfort Retail Holdings, Inc. *Id.* at ⁋ 15.

## ARGUMENT

14.     The Debtors provide no argument in the Motion as to why, incident to post-petition borrowing from their equity holder, the Court should approve the Debtors' release of each other, their predecessors, their officers, directors, employees, subsidiaries and affiliates. Nor do they provide any argument why they should provide a broad release of their equity holder of all claims, including claims relating to its relationship with the debtors as equity holder or otherwise, and not limited to its role as lender. This type of release is sometimes included in plans of reorganization.  Yet there is no plan of reorganization in these cases.

15.     Even if the release provision at issue were included in a plan that was otherwise confirmable, that would not be the end of the inquiry.   Pursuant to this Court's decisions in *In re Tribune Company,* 464 B.R. 126 (Bankr. D. Del. 2011) and *In re Washington Mutual, Inc.,* 442 B.R. 314 (Bankr. D. Del. 2011), among others, the five factors set forth in *In re Zenith Elecs. Corp.,* 241 B.R. 92, 110 (Bankr. D. Del 1999) and *In re Master Mortgage Inv. Fund, Inc.,* 168 B.R. 930, 937-38 (Bankr. W. D. Mo. 1994) should be considered in determining whether, notwithstanding § 524(e) of the Code, a plan may provide for releases by debtors of non-debtor entities.  *See Tribune* 464 B.R. at 186; *Washington Mutual*, 442 B.R. at 346; *In re Spansion, Inc.*, 426 B.R. 114, 142-43, n. 47 (Bankr. D. Del 2010); *In re Coram Healthcare Corp.*, 315 B.R. 321, 335 (Bankr. D. Del. 2004). Those factors are as follows:

(i).     identity of interests between debtor and non-debtor release, so that a suit against the non-debtor will deplete the estate's resources (e.g., due to a debtor's indemnification of a non-debtor);

(ii).     substantial contribution to the plan by non-debtor;

(iii).     necessity of release to the reorganization;

     (iv).    overwhelming acceptance of plan and release by creditors; and

     (v).    payment of all or substantially all of the claims of the creditors and

     interest holders under the plan.

*Tribune* 464 B.R. at 186 (citing *Washington Mutual*, 442 B.R. at 346 (citing *Zenith*, 241 B.R. at

110)). "The factors are neither exclusive nor conjunctive requirements, but simply provide

guidance in the Court's determination of fairness." *Tribune* 464 B.R. at 186 (citing *Washington*

*Mutual*, 442 B.R. at 346). These factors will be referred to hereinafter as the "*Zenith* factors."

     16.    The Motion is silent as to whether any of the *Zenith* factors are met for

any of the released parties, all of whom are insiders or related to insiders. Four of the five

factors directly relate to a plan, which has not been filed and appears unlikely in these cases. It is

therefore difficult to see how the Debtors could meet those four factors. Moreover, with respect

to factor (v), it appears that the DIP financing leaves no funds available to make any payment to

unsecured creditors, let alone full payment. Therefore, if this release provision was in a plan, that

element would clearly not be met.

     17.    The second *Zenith* factor is "substantial contribution" made to the plan by

the parties to be released. There is simply no consideration being provided by any party other

than arguably the DIP lender itself. That consideration, however, is not gratuitous – the DIP

lender is providing junior secured financing at a cost to the estates. No consideration is being

paid by the insider DIP lender for a release of potential claims unrelated to its role as a lender.

     18.    In *Continental Airlines,* the Third Circuit Court of Appeals reversed

confirmation of a plan on the basis of the inclusion of non-consensual third-party releases of the

Debtors' directors and officers. *Gillman v. Continental Airlines (In re Continental Airlines)*, 203

F.3d 203, 217-18 (3d Cir. 2000). The Court indicated, "we have found no evidence that the non-

debtor D & Os provided a critical financial contribution to the Continental Debtors' plan that was necessary to make the plan feasible in exchange for receiving a release of liability." *Id.* at 215.

19.     In *Washington Mutual,* this Court held that there was no basis for allowing debtor releases, or third party releases, of the debtors' directors, officers, or professionals when "[t]he only 'contribution' made by them was in the negotiation of the Global Settlement and the Plan, [which] activities are nothing more than what is required of directors and officers of debtors in possession (for which they have received compensation and will be exculpated) . . . ." 442 B.R. at 354.

20.     Similarly, in *In re Genesis Health Ventures, Inc.*, 266 B.R. 606–07 (Bankr. D. Del. 2001), this Court rejected releases by the debtors of their own officers, directors, employees and professionals, holding, "the release of the debtors' pre-petition claims against the officers, directors, employees and professionals of the debtors is beyond the post-petition focus of the *PWS Holding Corporation* [228 F.3d 224 (3d Cir. 2000)]."  This Court further stated:

> As in *Zenith*, the officers and directors of the debtors no doubt made meaningful contribution to the reorganization by designing and implementing the operational restructuring of the companies, and negotiating the financial restructuring with parties in interest. However, the officers, directors and employees have been otherwise compensated for their contributions, and the management functions they performed do not constitute contributions of "assets" to the reorganization.

*Genesis Health,* 266 B.R. at 606–07.

21.     In addition, an insider DIP loan should be carefully scrutinized.  In *In re Philadelphia Newspapers, LLC*, 445 B.R. 450 (Bankr. E.D. Pa. 2010), the court indicated that the fact a proposed DIP lender was an insider made it even less likely that a DIP loan funded by him could be approved.  445 B.R. at 465.  *Philadelphia Newspapers* involved competing DIP

financing packages and the insider made an application for substantial contribution for helping to improve the terms of the ultimate DIP financing supplied by another party.

22.    In these cases, the overreach by the equity holder is clear. The equity holder seeks releases not just relating to its provision of financing, but also relating to previous transactions with the Debtors and their predecessors, releases of the Debtors, and releases of the Debtors' officers, directors, and employees and affiliates. These broad, plan-like releases, not supported by consideration, are patently unreasonable.

23.    The fact that the releases will not be effective against third parties until the expiration of the Challenge Period does not resolve the issue. The releases by the estates are immediately effective upon entry of a Final Order.  A challenge period that requires parties in interest to investigate all claims that the Debtors have against each other, against their current and former equity holders, all of their subsidiaries and affiliates, and each of their officers, directors and employees is simply not feasible.

24.    In addition, the release purports to include in the definition of "Releasing Party," "all those claiming by, through or under them including, without limitation, their estates and their current and former direct and indirect subsidiaries, and each such entity's current and former directors, officers, managers, members, equity holders, successors and assigns, in each case to the extent permitted by applicable law and solely in such parties' capacities as such." The Debtors can only provide releases on their own behalf and cannot force releases on non-consenting third parties. To the extent this provision merely seeks to clarify that all derivative claims are being released, it is unnecessary; the Debtors' release will have whatever force applicable law provides. If this provision releases claims held by third parties that the Debtors' release on its own would not release, it is an impermissible third-party non-consensual release.

25.    It is often said that "the conduct of bankruptcy proceedings not only should be right but must seem right." *In re Ira Haupt & Co.*, 361 F.2d 164, 168 (2d Cir. 1966). The broad releases sought by the insider DIP lenders, unsupported by consideration, are simply not right.

**WHEREFORE,** the United States Trustee respectfully requests this Court to deny the Motion, and award such other relief as this Court deems appropriate under the circumstances.

Dated:  September 27, 2023
        Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**REGIONS THREE AND NINE**

By:  */s/ Linda J. Casey*
Linda J. Casey, Esquire
Trial Attorney
United States Department of Justice
Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491
(302) 573-6497 (Fax)
Linda.Casey@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2023, I electronically filed *The United States Trustee's Objection to the Debtor's Motion for Interim and Final Orders (I) Authorizing Secured Post-Petition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(c)* with the Clerk of this Court using the CM/ECF system which will send notification of such filing to all ECF registrants in this case.  I further certify that the foregoing was emailed to the following:

| | |
|---|---|
| Morris, Nichols, Arsht & Tunnell LLP<br>1201 Market Street, 16th Floor,<br>Wilmington, Delaware 19801<br>Robert Dehney, Esq.<br>Andrew Remming, Esq.<br>RDehney@morrisnichols.com<br>aremming@morrisnichols.com | Burr & Forman LLP<br>420 North 20th Street, Suite 3400,<br>Birmingham, AL 35203<br>Derek F. Meek. Esq.<br>Jeffrey T. Baker, Esq.<br>dmeek@burr.com<br>jbaker@burr.com<br><br>222 Delaware Avenue, Suite 1030,<br>Wilmington, DE 19801<br>J. Cory Falgowski, Esq.<br>jfalgowski@burr.com |
| COLE SCHOTZ P.C.<br>Justin R. Alberto, Esq.<br>Stacy L. Newman, Esq.<br>500 Delaware Avenue, Suite 1410<br>Wilmington, DE 19801<br>jalberto@coleschotz.com<br>snewman@coleschotz.com | COLE SCHOTZ P.C.<br>Sarah A. Carnes, Esq.<br>1325 Avenue of the Americas, 19th Fl.<br>New York, NY 10019<br>scarnes@coleschotz.com |

/s/ *Linda J. Casey*
Linda J. Casey, Trial Attorney