# Exhibit 2

## Keller Declaration

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| THE MITCHELL GOLD CO., LLC, *et. al.,* | ) | Case No. 23-11385 (LSS) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

### DECLARATION OF MITZI KELLER IN SUPPORT OF SALEM LEASING CORPORATION'S MOTION FOR RELIEF FROM AUTOMATIC STAY

I, Mitzi Keller, hereby declare under penalty of perjury, that:

1.      I am the Vice President of Credit Collections for Salem Leasing Corporation ("Salem") and have served in such role for thirty-seven (37) years.  I am competent to testify about the matters set forth herein.  The statements herein are based on my personal knowledge and the business records regularly maintained by Salem.

2.      I am authorized to submit this declaration (the "**Declaration**") on behalf of Salem in support of Salem Leasing Corporation's Motion for Relief from the Automatic Stay (the "**Motion**").[2]

3.      On or about July 16, 2021, Salem and Debtor The Mitchell Gold Co., LLC ("**Mitchell Gold**") executed a Vehicle Lease and Service Agreement (the "**Lease**"), which provided for Salem to lease certain vehicles to Mitchell Gold.  A true and correct copy of the Lease is attached hereto as **Exhibit A**.

---

[1]      The Debtors in these chapter 7 cases, along with the Debtors' federal tax identification numbers are: The Mitchell Gold Co., LLC (8942) and SG-TMGC, LLC (0248). The Debtors' addresses are, respectively, 135 One Comfortable Place, Taylorsville, North Carolina 28681 and P.O. Box 3417, Little Rock, Arkansas, 72203.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4.    Salem and Mitchell Gold executed four Schedule As to the Lease for the lease of the five vehicles and five trailers.  True and correct copies of the Schedule As are attached hereto collectively as **Exhibit B**.

5.    On August 29, 2023, Salem sent Mitchell Gold notice that the Lease was terminated pursuant to Section XII(B) of the Lease.  A true and correct copy of the notice is attached hereto as **Exhibit C**.

6.    Mitchell Gold ceased paying the charges owed under the Lease following July 2023 and is owed $16,200.56 as of the Petition Date under the Lease.

7.    Following the termination and prior to the Petition Date, Salem was able to retrieve all its leased property except for one vehicle, which is identified as no. 23804 in the Lease documents (the "**Vehicle**"), which remains at the Debtor's facility located at 125 LuLu Lane, Statesville, North Carolina.  Salem's title and registration for the Vehicle are attached hereto collectively as **Exhibit D**.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: October 24, 2023

Mitzi Keller
Vice President of Credit
Salem Leasing Company

2

## Exhibit A

**Vehicle Lease and Service Agreement**



# VEHICLE LEASE AND SERVICE AGREEMENT

July 16, 2021

This Agreement made on the date first above mentioned, between SALEM LEASING CORPORATION, hereinafter called Salem, with its principal address at 175 Charlois Blvd., Winston-Salem, NC 27103, and THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS, hereinafter called Customer, with its principal address at 135 1 Comfortable Pl, Taylorsville, NC 28681.

## WITNESSETH
### I. VEHICLES COVERED AND TERM:

**A.** Salem does hereby lease to Customer and Customer does hereby lease from Salem, the vehicle or vehicles described in Schedule(s) A (hereinafter, collectively, "Vehicles" or "Vehicle"), attached hereto and from time to time hereafter executed and made part of this agreement. Execution of Schedule A shall constitute Customer's authorization to Salem to acquire the Vehicles. The term of this Agreement shall commence with respect to each Vehicle on the date the Vehicle is tendered by Salem to Customer, or 48 hours after the date Salem notifies Customer that the Vehicle is available for delivery, whichever occurs first, and shall continue for the term specified on Schedule(s) A unless terminated earlier as provided for hereinafter. Customer shall (with the exception of a Vehicle purchased, pursuant to Paragraph XII hereof prior to the expiration of its lease term) return the Vehicle(s) to Salem at the location listed on its Schedule A in the same condition as when received, ordinary wear and tear excepted. If repairs are required, the lease term shall continue until such repairs are made. Any holding over after the expiration of a Vehicle's lease term shall be on a week-to-week basis and shall be subject to the terms of this agreement.

**B.** Acceptance of Vehicles in service constitutes Customer's acknowledgement of compliance with Customer's specifications. Customer agrees to pay for any structural alterations (not to be made without Salem's prior written consent), special equipment, or material alteration in painting, lettering or artwork thereafter required by Customer. In the event that, subsequent to the date of execution of this Agreement by Salem, any Federal, State or local law, ordinance or regulation requires the installation of any additional equipment, Customer will be responsible for all costs including installation expenses.

**C.** Where a Vehicle is operated by Customer with a trailer or other equipment not included on Schedule A, or not maintained by Salem under a separate agreement, Customer agrees that such trailer and/or equipment will be in good operating condition.

**D.** Salem may finance the Vehicle(s) or any part thereof, and in that connection may as security, give the lender an installment sales instrument, mortgage, or security agreement covering such vehicles or assign amounts hereunder.

### II. OPERATION OF VEHICLE:

**A.** The Vehicles will be used and operated by Customer only in the normal and ordinary course of Customer's business and not in violation of any laws or regulations (including legal weight and size limits).

**B.** Each Vehicle will be promptly returned by Customer to Salem's facility specified in Schedule A at the end of its lease term unless Customer purchases the Vehicle as provided for hereinafter.

### III. MAINTENANCE AND REPAIRS TO VEHICLES:

**A.** Salem agrees to provide from its facilities and at its costs: (1) Oil, lubricants, tires, and all other operating supplies and accessories necessary for the proper and efficient operation of the Vehicles; (2) Maintenance and repairs including all labor and parts which may be required to keep the Vehicles in good operating condition; (3) Painting and lettering at the time the Vehicles are placed into service as specified on Schedule A; (4) Washing of the Vehicles the number of times specified on Schedule A; and (5) Road service due to mechanical and tire failure.

**B.** Customer shall report any and all faulty operations or other trouble with respect to any and all Vehicles no later than the date of occurrence in writing on forms provided by Salem according to DOT regulations. Except and until so reported, it shall be presumed that said Vehicles are in good repair. Customer further agrees not to cause or permit any person other than Salem or persons expressly authorized by Salem to make repairs or adjustments to Vehicles.

**C.** Customer agrees to return each Vehicle to Salem for service and maintenance at the facility stated on Schedule A for a minimum of 8 hours per month during Salem's normal business hours.

### IV. FUEL:
When Salem is designated on the Schedule A:

**A.** Salem will provide fuel and Diesel Exhaust Fluid (DEF) for vehicles from its own or other designated facilities. The charge for fuel and DEF will vary over time and be billed to Customer in addition to the other charges provided for on the applicable Schedule A.

**B.** If Customer purchases fuel and DEF from sources other than Salem's facilities or other designated facilities, Customer will be responsible for these charges.

### V. LEGALIZATION:

**A.** Salem agrees to pay for the state motor vehicle license for the licensed weight shown on Schedule A, personal property taxes and vehicle inspection fees for each Vehicle in the state of domicile, and Federal Highway Use Tax, but only up to the annual allowance amount for each item shown on Schedule A. Customer will be responsible for any increases or changes in assessment of these items thereafter.

**B.** Upon written request or where designated on Schedule A, where legal, Salem will apply for vehicle licenses and prorate or state reciprocity plates at Customer's request and cost.

**C.** Customer agrees to pay for any special license or pay any taxes resulting from the operation and use of the Vehicles including fuel taxes, mileage taxes, ton mileage taxes, highway or bridge tolls. Salem shall have the right to settle any claim or lien involving any Vehicle as a result of Customer's failure to pay any such taxes and Customer will immediately reimburse Salem.

**D.** Customer agrees to provide Salem with all documentation required for vehicle licensing and fuel tax reporting on a weekly basis. If Customer provides Salem with inaccurate information or late information, Customer agrees to reimburse Salem for any charges, penalties, or expenses. In addition, if Customer is consistently late in turning in accurate trip records, Salem shall have the right, after providing the Customer with 30 days prior notice, to cease applying for vehicle licenses and to cease administering the fuel tax reporting.

## VI. SUBSTITUTION AND EXTRA VEHICLES:

**A.** Salem agrees to furnish a substitute vehicle at no extra charge for any Vehicle which may be temporarily inoperable because of mechanical failure, the substitute to be as nearly as practicable the same size and appearance as the Vehicle, except that no special painting, lettering or other alterations need be made on the substitute vehicle. The substitute vehicle will be furnished to Customer whenever possible at the place at which the Vehicle was disabled and shall be returned by Customer to Salem at the site specified by Salem.

**B.** A substitute vehicle, while in Customer's service, shall be subject to all the terms and conditions of this Agreement as if it were a Vehicle. Salem's failure to furnish a substitute vehicle within a reasonable time, where it is obligated hereunder to do so, shall cause the charges applicable to the inoperable Vehicle to abate until the Vehicle is returned to Customer's service or until a substitute is tendered to Customer. Salem's liability in the event of such a failure shall be limited to the abatement of the charges for the inoperable Vehicle.

**C.** Salem shall have no obligation to furnish a substitute vehicle if the inoperable Vehicle is out of service for ordinary maintenance and service time, or is out of service because of damage resulting from collision or upset, theft, or is specialized, or carries a truck body not owned by Salem or has accessories for which Salem is not responsible, or is of a type Salem does not have in its rental fleet.

**D.** While a Vehicle is out of service because of damage resulting from collision or upset, theft, Salem will, at the request of Customer, rent Customer a replacement vehicle, if available from Salem's rental fleet, at a rental rate equal to the charges applicable to the inoperable Vehicle plus 20%. Irrespective of whether or not Customer rents a vehicle from Salem while a Vehicle is out of service for repairs of damage resulting from collision or upset, the charges applicable to the out of service Vehicle shall not abate.

**E.** Salem agrees to rent to Customer extra Vehicles on short-term rental basis when requested and if available. The charge for these vehicles will be at the lease rate of the last delivered vehicle plus 20%. If dissimilar, Customer shall pay published rental rate less 10%.

## VII. DRIVERS:

**A.** Customer agrees that each Vehicle be operated by a safe, careful, and properly licensed driver, who is the employee or agent of Customer, subject to Customer's exclusive direction and control and who operates the vehicle lawfully.

**B.** Salem agrees, at Customer's request, to assist Customer in developing a driver education and safety program.

**C.** Customer agrees that the Vehicles will not be operated in a reckless or abusive manner, or off an improved road or on a flat tire, or improperly loaded, or loaded beyond the manufacturer's recommended maximum gross weight shown on Schedule A. Customer agrees to cause its drivers to check oil and coolant levels in each Vehicle covered by this Agreement on a daily basis to prevent damage to any Vehicle resulting from failure to maintain proper oil and coolant levels. Customer agrees to reimburse Salem in full for damage to any Vehicle, including expenses, resulting from a violation of this provision. Customer will be responsible for all expenses of towing or removal of any mired Vehicle when not in Salem's possession or on Salem's premises.

**D.** Customer agrees to provide motor vehicle reports for all drivers who will operate the Vehicle(s) upon request by Salem.

## VIII. CHARGES:

**A.** Customer agrees to pay Salem the fixed charge, as stated on Schedule(s) A, in advance and each payment in advance thereafter, for each Vehicle upon receipt of Salem's invoice for same and to pay all other charges, specifically including but not limited to all fuel charges, the mileage rate per mile provided for under this agreement, and any additional charges owed to Salem, within 10 days of the date of Salem's invoice without deduction or set-off.

**B.** Mileage shall be determined from odometer readings. If the odometer fails to function, which failure Customer shall immediately report to Salem in writing, the mileage for the period in which the failure existed may be determined at Salem's option from (1) Customer's trip records, or (2) from the amount of fuel consumed and the miles per gallon record of Salem's averaged for the previous 30 days.

**C.** Salem shall add an amount equal to one and one-half percent (1-1/2%) or the maximum legally permissible amount to any charge(s), which remain unpaid for more than thirty (30) days after date of invoice(s). Like charges may be made for each subsequent thirty- (30) day period that such rent and/or other charge(s) remains unpaid.

**D.** It is agreed by Customer that a Stated Average Annual Mileage is shown on the Schedule A and is used exclusively for depreciation rating purposes. On an annual basis, using the anniversary date as the base, the actual average mileage will be analyzed by Salem to determine any major variations over the stated figure. If in any year the actual average mileage exceeds the Stated Average Annual Mileage by 5%, Salem shall have the right to adjust its depreciation and rates

accordingly.   The schedule by which Salem will determine its depreciation will be Salem's corporate policy depreciation schedule.

## IX. ADJUSTMENTS:

**A.** The parties recognize that the charges provided for in this Agreement are based on Salem's current cost of labor, parts and supplies. The cost of Salem's operation may fluctuate after the date of execution of this Agreement. Customer agrees that for each rise of 1% in the Consumer Price Index, as published by the U.S. Bureau of Labor Statistics (for All Urban Consumers for the United States) using a 1967 base year, above the base Index figure on Schedule A hereto, the fixed lease charge and mileage charge for each Vehicle, including excess mileage charges and those charges stated in the Mileage Guarantee, if any, shall be adjusted upward on trucks, tractors, trailers, and refrigeration in an amount equal to 1% of one-half of the fixed lease charge, and 1% of three-quarters the basic mileage charges.

**B.** Salem reserves the right to make annual C.P.I. adjustments.  Any and all subsequent adjustments for Vehicles shall be based on the last index in which present rates are based or computed.  Adjustment in charges shall be effective on the first day of each calendar month following the adjustment period and will be based on the latest index which has been published prior to such effective date.  In the event the C.P.I. should be discontinued, another mutually agreeable cost adjustment index to adjust charges shall be agreed upon.

**C.** Customer agrees to pay for (1) any sales or use tax now or hereafter imposed upon the use of the Vehicle or on the rental or other charges accruing hereunder, (2) any increase in license or registration fees, including federal highway use tax, vehicle inspection fees, and personal property tax rates, or (3) any new or additional tax or governmental fees, adopted after the date of the execution of the applicable Schedule A by Customer, upon the fuel provided by Salem.

## X. INSURANCE:

**A.** LIABILITY COVERAGE: Customer agrees, at its own expense, to provide and maintain, at all times during the term of the Agreement, primary Auto Liability insurance covering the Vehicle(s) (including all substitute vehicles) with a combined single limit of not less than $3,000,000 US Dollars (unless different limits are specified on the attached Schedule A) for bodily injury and property damage resulting from any one accident. Such insurance shall be with an insurance carrier satisfactory to Salem which names and endorses Salem and any other party designated by Salem, by endorsement to the policy or policies, as an additional insured.

**B.** PHYSICAL DAMAGE COVERAGE: Customer will be responsible and pay for all loss (including theft) or damage to any Vehicle or substitute vehicle, including related expenses arising from any cause and regardless of how, including Salem's negligence, or where, including Salem's premises, the loss or damage occurred. Customer's liability for any Vehicle will not exceed the amount Customer would be required to pay to purchase such Vehicle under Article XII, D for leased Vehicles listed on Schedule A and fair market value for substitute, replacement or other additional vehicles not listed on the Schedule A. Customer agrees to furnish Salem with evidence of physical damage insurance coverage reasonably acceptable to Salem with Salem endorsed as a loss payee and named insured.

**C.** In the event of a partial loss, Customer or Customer's insurer will continue to pay ongoing lease charges during the period repairs are being completed. In addition, Customer shall reimburse Salem for repair costs within thirty (30) days after repair costs are completed, regardless of the status of insurance.

**D.** Customer will notify Salem immediately of the theft of, loss or damage to, any Vehicle, and in the case of physical damage, Salem will determine if the Vehicle is road-worthy and may continue in operation. All repairs will be conducted at a shop satisfactory to Salem.

**E.** In the event of theft or total loss of any Vehicle and provided Customer has paid all amounts due under the Agreement, Salem, at its option, will within 30 days (1) terminate the Agreement as to such Vehicle; or (2) provide a replacement vehicle for the remainder of the lease term subject to all terms and conditions of the Agreement.

**F.** VEHICLE CONTENTS:  Loading or Unloading – Salem will not be liable for loss of, or damage to, any goods, cargo or property ("Property") left in or upon any vehicle at any time or place, including a garage or location operated by Salem (whether or not said loss or damage was caused by or related to the negligence of Salem, its agents, servants or employees).

**G.** FAILURE TO PROVIDE INSURANCE: In the event that Customer fails to provide and maintain the required insurance coverage or fails to furnish Salem with required evidence of insurance, Salem is authorized but not required to obtain such insurance on behalf of Customer and Customer agrees to pay Salem for the cost of the insurance so obtained and alternately, Salem may terminate the Agreement in accordance with the provisions of Paragraph XII thereof.

**H.** DEFENSE AND PROSECUTION OF CLAIMS: Customer and its agents and employees will cooperate with Salem and any insurer in the report, investigation, prosecution or defense, in any manner reasonably requested by Salem, respecting all accidents, claims or suits arising from the operation of the Vehicles and will promptly deliver to Salem copies of all papers or notices served upon or delivered to Customer, its agents or employees and will otherwise comply with the notification requirements of Customer's insurance carrier. Without limiting the foregoing, Customer will notify Salem immediately upon the occurrence of any accident involving a Vehicle and will cooperate in the post-accident steps required by Salem.

## XI. INDEMNIFICATION:

Customer will indemnify Salem and its agents, servants and employees and hold them harmless from any and all claims, suits, proceedings, costs, losses, expenses, damages and liabilities, including but not limited to attorneys' fees and court costs, claimed by any person, organization, association or other entity with respect to:

**A.** Any and all injuries (including death) or property damage sustained by such party as a result of the act or omission of Customer or any driver, agent, servant or employee of Customer, and

**B.** Any liability imposed upon or assumed by Customer under any Workers' Compensation Act or other employee benefit plan or contract whatsoever; and

**C.** Any claim based upon Customer's failure to comply with the terms and provisions of this Agreement; and

**D.** Any claim relating to the Vehicles, or any accessories or equipment furnished to Customer or the care, custody or operation of the Vehicles; and

**E.** Any damages caused by Customer's transportation or handling of any hazardous or toxic materials or substances. Any indemnity under this paragraph shall apply whether or not covered by required insurance and/or in excess of the required limits.

## XII. TERMINATION:

**A.** Either party may terminate the lease of any Vehicle prior to expiration of its term on any anniversary date of its Date of Delivery indicated on the Schedule A by giving to the other party at least 90 days prior written notice. If termination is effected by Salem for any reason other than breach or default, Customer will have the right, but not the obligation, to purchase in accordance with Article XII, Section D, any or all Vehicles with respect to which termination notice has been given on the termination date(s). If termination is effected by Customer, Customer will at Salem's option purchase in accordance with Article XII, Section D all Vehicles with respect to which termination notice has been given on the termination date(s).

**B.** In the event Customer becomes insolvent, files a voluntary petition in bankruptcy, makes an assignment for the benefit of creditors, is adjudicated bankrupt, permits a receiver to be appointed for its business, permits or suffers a material disposition of its assets, the lease of Vehicles will terminate at the election of Salem. Upon written notice sent to Customer, Salem may at its option demand that Customer purchases the Vehicles within 10 days of termination in accordance with Article XII, Section D.

**C.** Breach or Default

**1.** If Customer breaches or is in default of any provision of this Agreement and that breach or default is not cured within 7 days after written notice has been mailed to Customer, Salem may immediately, without further notice or demand, take possession of the Vehicles. If Customer fails to provide insurance in accordance with Article X, Salem may immediately take possession of the Vehicles. Salem will be entitled to enter upon any premises where the Vehicles may be and remove them and refuse to re-deliver them to Customer until such breach or default is cured without any of such actions being deemed an act of termination and without prejudice to the other remedies Salem may have under this Agreement and at law. Customer will continue to be liable for all charges accruing during the period the Vehicles are retained by Salem.

**2.** In the event Salem takes possession of any Vehicle and there is any property in or upon the Vehicle which belongs to or is in the custody or control of Customer, Salem may take possession of such items and either hold them for Customer until Customer claims them or place them in public storage for Customer at Customer's sole expense and risk of loss or damage.

**3.** If Customer's breach or default continues for 7 days after written notice has been mailed to Customer, Salem may terminate the Agreement. Upon termination, Salem may demand that Customer purchase, within 10 days, any or all Vehicles in accordance with Article XII D without prejudice to other remedies Salem may have under this Agreement and at law.

**4.** Customer agrees to pay Salem all Salem's costs and expenses, including reasonable attorney's fees, incurred in collecting amounts due from Customer or in enforcing any rights of Salem hereunder.

**D.** In the event Customer (pursuant to Article XII, A) shall choose to purchase or be required to purchase any Vehicle, or should Salem (pursuant to Article XII, B or XII, C) demand of Customer that it purchase any Vehicle, Customer agrees to purchase each such Vehicle for cash within the time provided for in this Agreement for its Original Value as shown on Schedule A, less the total depreciation which has accrued for such Vehicle in accordance with Schedule A, provided that such amount shall not be less than fifteen percent (15%) of its Original Value set forth in Schedule A. Additionally, Customer agrees to pay Salem an additional five percent of the depreciated Schedule A value and for the amount of any unexpired licenses, applicable taxes, including but not limited to US and Canadian personal property taxes and federal highway use taxes, and other prepaid expenses previously paid by Salem for the Vehicles prorated to the date of sale and will be responsible for any sales or use tax arising from the purchase. Customer will have no obligation or right to purchase any Vehicle as to which the term on Schedule A has expired.

## XIII. WARRANTIES:

Salem makes no express or implied warranties or representations as to any matter whatsoever including, without limitation, the condition of any Vehicle or its merchantability or fitness for any particular purpose. Except as otherwise expressly provided herein, no defect in, or unfitness of, any Vehicle will relieve Customer of the obligation to pay rent or make any other payments required hereunder or of any other obligation hereunder.

## XIV. ASSIGNMENT OF AGREEMENT:

This agreement shall be binding on the parties hereto, their successors, legal representatives and assigns. Customer does not have the right to sublease or transfer any of the Vehicles, nor to assign this Agreement or any interest herein or therein without the prior written consent of Salem. For purposes of this Article XIV, a change of control of Customer or Customer's assets (through merger, acquisition, change in ownership, material disposition of assets, or otherwise) shall be deemed an assignment for which Salem's prior written consent is required. Salem may freely assign this Agreement without Customer's consent.

## XV. FORCE MAJEURE:

Salem shall incur no liability to Customer for failure to supply any Vehicle, provide a substitute vehicle, repair any disabled Vehicle, or provide fuel for Vehicles, if prevented by a national emergency, war, act of terrorism, riot, fire, labor dispute, Federal, State, or Local law, rule, regulation, shortage (local or national), or fuel allocation program, or any other cause beyond

Salem's control whether existing now or hereafter. Notwithstanding Salem's inability to perform under such conditions, Customer's obligations hereunder shall continue.

## XVI. MISCELLANEOUS:
This Agreement is intended for general use throughout the United States and in the event that any of the terms or provisions hereof are determined by judicial action to be invalid or unenforceable in any given jurisdiction, then such terms or provisions shall be deemed null and void to the extent that they are deemed invalid or unenforceable, but without invalidating or rendering unenforceable the remaining terms and provisions thereof, and no such invalidation or unenforceability in any jurisdiction shall invalidate or render unenforceable such provisions in any other jurisdiction. This Agreement has been drafted with the cooperation and participation of all parties. Accordingly, no part of this Agreement will be construed in favor of or against any party. It is agreed that this Agreement shall be deemed to be executed in Winston-Salem, North Carolina. This Agreement, and any and all disputes in any way relating to this Agreement (including matters of construction, validity, and performance) shall be governed by and construed in accordance with the substantive laws of the State of North Carolina without giving effect to the conflict of laws provisions thereof. Any action to enforce or interpret this Agreement shall be brought and maintained exclusively in the District or Superior Court of Forsyth County, North Carolina. The parties irrevocably submit and consent to the jurisdiction of said court.

## XVII. NOTICES:
All notices provided for herein shall be in writing and mailed to an officer of Salem and Customer at their respective addresses set forth above or at such other addresses designated in writing by either party, by registered or certified mail. This Agreement shall not be binding upon Salem until executed by its President or other duly authorized officer at its corporate office and shall constitute the entire Agreement and understanding between the parties concerning the Vehicles, notwithstanding any previous writings or oral undertakings, and its terms shall not hereafter be altered by any oral agreement or informal writing, nor by failure to insist upon performance, or failure to exercise any rights or privilege, but alterations, additions, or changes to this Agreement shall be accomplished only by written endorsement hereon, or amendment hereto, or additional Schedules made a part hereof duly executed by both parties.

## XVIII. FINANCIAL STATEMENTS:
Customer shall furnish Salem with annual financial statements throughout the lease term.

## XIX. HEADINGS:
Article headings do not constitute any part hereof and shall not be considered in the interpretation hereof.

**IN WITNESS WHEREOF, each of the parties hereto, has caused this Agreement to be duly executed the day and year first above written.**

**SALEM LEASING CORPORATION**

_l. Stephen Dale    SVP Finance_
**(Name & Title)**

By: _[signature]_
**(Signature)**

Witness: _Heather Whitehart_

**THE MITCHELL GOLD CO**
**DBA MITCHELL GOLD + BOB WILLIAMS**
**(Customer)**

David Rogalskk, COO/CFO
**(Name & Title)**

By: _[signature]_
**(Signature)**

Witness: _[signature]_

**Exhibit B**

**Schedule A's to Lease**

**CCC SALEM DD**

SCHEDULE 1

THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS

Schedule A No. _____ 1

Page 1 of 2

LOCATION NAME: _____ Statesville, NC

| Vehicle No. (1) | Date of Delivery (2) | Lease Term (Mos or Yrs) (3) | Year (4) | Make (5) | Model & Type (6) | Serial Number (7) | Licensed Weight and/or Mfgr Gross (8) | Original Value (9) | DEPREC Wkly Amt. (10) | CPI Index Fig 1987 Base (11) | Fixed Rental Charge Per Month In Advance (12) | Mileage Rate Per Mile (13) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | VEHICLE DESCRIPTION | | | | | | | |
| 23801 | 2, 15, 22 | 7 Years | 2022 | Freightliner | M2 106425T | 1FVDCXFE4NHN13347 | 54,000 | $98,281 | $171.36 | 813.88 | $1,687.47 | $0.077 |
| 23800 | 2, 15, 22 | 7 Years | 2022 | Freightliner | M2 106425T | 1FVDCXFE4NHN13346 | 54,000 | $98,281 | $171.36 | 813.88 | $1,687.47 | $0.077 |

NOTES:

Notwithstanding anything in the Agreement to the contrary, it is agreed:

1. If Customer elects to provide physical damage coverage on vehicles leased or rented pursuant to the Agreement, Customer is liable to Salem for loss or damage to vehicles or substitutes, pursuant to Paragraph 10 of the Vehicle Lease and Service Agreement which its insurance carrier fails or refuses to pay. **CUSTOMER ACKNOWLEDGEMENT:** _____
2. On truck engines manufactured after January 1, 2007, ultra low sulfur diesel fuel must be used. Customer agrees to reimburse Salem for damages resulting from Customer's using the wrong type fuel.
3. The cost of Diesel Exhaust Fluid (DEF) shall be billed to Customer in addition to other charges. Customer agrees to reimburse Salem for damages resulting from Customer's failure to properly use DEF.

This Lease has been assigned to one or more secured parties and The purchase or assignment of this Lease would violate the right of the secured parties.

Schedule A No. 1
Page 2 of 2

Notwithstanding anything in the Agreement to the contrary, it is mutually agreed:

1. The Original Value, Weekly Depreciation, and Fixed Charges Per Month are based upon manufacturer's quoted price for vehicles as of the date of execution by Customer of this Schedule A. In the event manufacturer's quoted price for such vehicle is increased prior to the Date of Delivery of the vehicles, Customer agrees that for each $50 increase in price (or fraction thereof), the following shall be increased accordingly:

| ORIGINAL VALUE | WEEKLY DEPRECIATION | FIXED RENTAL CHARGE PER MONTH |
|---|---|---|
| $50.00 | $0.15 | $1.30 |

2. Primary Liability Insurance Responsibility:   Customer      Combined Single Limits $1,000,000 per accident.
   (Salem/Customer)

3. Physical Damage Responsibility:   Customer
   (Salem/Customer)

4. Fire and Theft Responsibility:   Customer
   (Salem/Customer)

5. Domicile of the Vehicle(s) listed on this Schedule A (City, State):     Taylorsville, NC

6. Salem domicile service facility for vehicles listed on this Schedule A:     Statesville, NC

7. Vehicle(s) will be operated only in the following states:     NC
   In the event that the states in which Customer operates require additional equipment or equipment modification to comply with environment requirements or Customer changes the states in which it operates so that changes are required, Customer shall be responsible for the cost of such changes or modifications.

8. Fuel tax reporting provided by:   Salem
   (Salem/Customer)

9. The fixed rental charges include the following pegged amounts for legalization:

   License - $1,084
   Property and/or Ad Valorem Taxes - $855
   Federal Highway Use Tax - $0
   Cost of Permits - $0

   Amounts spent by Salem in excess of these pegged amounts will be billed separately.

10. Exterior washing frequency will be  12  per year.

11. Lettering and Painting one time amount:     $0

12. Deidentification of Graphics Responsibility:   Customer
    (Salem/Customer)

13. Stated Average Annual Mileage by unit:     50,000
    In the event that annual miles exceed the above by 5%, customer agrees to pay $0.10 per mile additional for all miles above the Stated Average Annual Mileage, unless Customer and Salem have agreed to an increase in the fixed charge per month for the remaining term of the lease.

This Schedule A (included Side One hereof) is hereby made a part of that certain Vehicle Lease and Service Agreement between the two parties dated as of the:   16th   day of   July, 2022

| SALEM LEASING CORPORATION | THE MITCHELL GOLD CO AKA MITCHELL GOLD + BOB WILLIAMS (Customer) |
|---|---|
| By: _____ | By: _____ |
| Title: SVP Finance | Title: COO/CFO |
| Date: 1-29-21 | Date: 7/23/21 |
| Witness: Heather Whitehurst | Witness: _____ |



SCHEDULE A

THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS

Schedule A No. 2
Page 1 of 2

LOCATION NAME: Statesville, NC

| Vehicle No. (1) | Date of Delivery (2) | Lease Term (Mos or Yrs) (3) | Year (4) | Make (5) | Model & Type (6) | Serial Number (7) | Licensed Weight and/or Mfg Gross (8) | Original Value (9) | DEPREC. Mky Amt. (10) | CPI Index Fig. 1967 Base (11) | Fixed Rental Charge Per Month In Advance (12) | Mileage Rate Per Mile (13) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23802 | 3/4/22 | 7 Years | 2023 | Freightliner | M2 106425T | 1FUBCXFE1PHCK089 - | 54,000 | $98,281 | $171.36 | 842.2 | $1,716.10 | $0.077 |
| 23803 | 3/9/22 | 7 Years | 2023 | Freightliner | M2 106425T | 1FUBCXFE3PHCK089 | 54,000 | $98,281 | $171.36 | 842.2 | $1,716.10 | $0.077 |

NOTES:

Notwithstanding anything in the Agreement to the contrary, it is agreed:

1. If Customer elects to provide physical damage coverage on vehicles leased or rented pursuant to the Agreement, Customer is liable to Salem for loss or damage to vehicles or substitutes, pursuant to Paragraph 10 of the Vehicle Lease and Service Agreement, which its insurance carrier fails or refuses to pay. **CUSTOMER ACKNOWLEDGEMENT:** [signature]

2. On truck engines manufactured after January 1, 2007, Ultra low sulfur diesel fuel must be used. Customer agrees to reimburse Salem for damages resulting from Customer's using the wrong type fuel.

3. The cost of Diesel Exhaust Fluid (DEF) shall be billed to Customer in addition to other charges. Customer agrees to reimburse Salem for damages resulting from Customer's failure to properly use DEF

This Lease has been assigned to one or more secured parties and The purchase or assignment of this Lease would violate the rights of the secured parties.

Notwithstanding anything in the Agreement to the contrary, it is mutually agreed:

1. The Original Value, Weekly Depreciation, and Fixed Charges Per Month are based upon manufacturer's quoted price for vehicles as of the date of execution by Customer of this Schedule A. In the event manufacturer's quoted price for such vehicle is increased prior to the Date of Delivery of the vehicles, Customer agrees that for each $50 increase in price (or fraction thereof), the following shall be increased accordingly:

| ORIGINAL VALUE | WEEKLY DEPRECIATION | FIXED RENTAL CHARGE PER MONTH |
|---|---|---|
| $50.00 | $0.15 | $1.30 |

2. Primary Liability Insurance Responsibility: _____Customer_____  Combined Single Limits $1,000,000 per accident.
(Salem/Customer)

3. Physical Damage Responsibility: _____Customer_____
(Salem/Customer)

4. Fire and Theft Responsibility: _____Customer_____
(Salem/Customer)

5. Domicile of the Vehicle(s) listed on this Schedule A (City, State):      Taylorsville, NC

6. Salem domicile service facility for vehicles listed on this Schedule A:      Statesville, NC

7. Vehicle(s) will be operated only in the following states:      NC
In the event that the states in which Customer operates require additional equipment or equipment modification to comply with environment requirements or Customer changes the states in which it operates so that changes are required, Customer shall be responsible for the cost of such changes or modifications.

8. Fuel tax reporting provided by: _____Salem_____
(Salem/Customer)

9. The fixed rental charges include the following pegged amounts for legalization:

   License - $1,084
   Property and/or Ad Valorem Taxes - $855
   Federal Highway Use Tax - $0
   Cost of Permits - $0

   Amounts spent by Salem in excess of these pegged amounts will be billed separately.

10. Exterior washing frequency will be __12__ per year.

11. Lettering and Painting one time amount:      $0

12. Deidentification of Graphics Responsibility:      Customer
(Salem/Customer)

13. Stated Average Annual Mileage by unit:      50,000
In the event that annual miles exceed the above by 5%, customer agrees to pay $0.10 per mile additional for all miles above the Stated Average Annual Mileage, unless Customer and Salem have agreed to an increase in the fixed charge per month for the remaining term of the lease.

This Schedule A (included Side One hereof) is hereby made a part of that certain Vehicle Lease and Service Agreement between the two parties dated as of the:      16th      day of      July, 2022

| SALEM LEASING CORPORATION | THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS (Customer) |
|---|---|
| By: | By: (David Rogalski) |
| Title: SLP Finance | Title: COO/CFO |
| Date: 3-18-22 | Date: 3/10/22 |
| Witness: | Witness: (Keith Stamey) |

# SCHEDULE A

**THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS**

Schedule A No. 3
Page 1 of 2

SALEM

LOCATION NAME: Statesville, NC

| Vehicle No (1) | Date of Delivery (2) | Lease Term (Mos or Yrs) (3) | Year (4) | Make (5) | Model & Type (6) | Serial Number (7) | Licensed Weight and/or Mfg Gross (8) | Original Value (9) | DEPREC Mthly Amt (10) | CPI Index Fig 1st Base (11) | Fixed Rental Charge Per Month In Advance (12) | Mileage Rate Per Mile (13) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 23804 | 3/29/22 | 7 Years | 2021 | International | MV607 | 3HCEUTAN8ML586115 | 54,000 | $95,103 | $165.82 | 843.89 | $1,699.00 | $0.077 |

**NOTES:**

Notwithstanding anything in the Agreement to the contrary, it is agreed:

1. If Customer elects to provide physical damage coverage on vehicles leased or rented pursuant to the Agreement, Customer is liable to Salem for loss or damage to vehicles or substitutes pursuant to Paragraph 10 of the Vehicle Lease and Service Agreement which its insurance carrier fails or refuses to pay. **CUSTOMER ACKNOWLEDGEMENT:**

2. On truck engines manufactured after January 1, 2007, ultra low sulfur diesel fuel must be used. Customer agrees to reimburse Salem for damages resulting from Customers using the wrong type fuel.

3. The cost of Diesel Exhaust Fluid (DEF) shall be billed to Customer in addition to other charges. Customer agrees to reimburse Salem for damages resulting from Customer's failure to properly use DEF.

Schedule A No. 3
Page 2 of 2

Notwithstanding anything in the Agreement to the contrary, it is mutually agreed:

1. The Original Value, Weekly Depreciation, and Fixed Charges Per Month are based upon manufacturer's quoted price for vehicles as of the date of execution by Customer of this Schedule A. In the event manufacturer's quoted price for such vehicle is increased prior to the Date of Delivery of the vehicles, Customer agrees that for each $50 increase in price (or fraction thereof), the following shall be increased accordingly:

| ORIGINAL VALUE | WEEKLY DEPRECIATION | FIXED RENTAL CHARGE PER MONTH |
|---|---|---|
| $50.00 | $0.15 | $1.30 |

2. Primary Liability Insurance Responsibility:      Customer         Combined Single Limits $1,000,000 per accident.
                                                (Salem/Customer)

3. Physical Damage Responsibility:              Customer
                                           (Salem/Customer)

4. Fire and Theft Responsibility:        Customer
                                    (Salem/Customer)

5. Domicile of the Vehicle(s) listed on this Schedule A (City, State):        Taylorsville, NC

6. Salem domicile service facility for vehicles listed on this Schedule A:        Statesville, NC

7. Vehicle(s) will be operated only in the following states:        NC
   In the event that the states in which Customer operates require additional equipment or equipment modification to comply with environment requirements or Customer changes the states in which it operates so that changes are required, Customer shall be responsible for the cost of such changes or modifications.

8. Fuel tax reporting provided by:              Salem
                                        (Salem/Customer)

9. The fixed rental charges include the following pegged amounts for legalization:

   License – $1,084
   Property and/or Ad Valorem Taxes – $827
   Federal Highway Use Tax – $0
   Cost of Permits – $0

   Amounts spent by Salem in excess of these pegged amounts will be billed separately.

10. Exterior washing frequency will be __12__ per year.

11. Lettering and Painting one time amount:        $0

12. Deidentification of Graphics Responsibility:          Customer
                                                    (Salem/Customer)

13. Stated Average Annual Mileage by unit:        50,000
    In the event that annual miles exceed the above by 5%, customer agrees to pay $0.10 per mile additional for all miles above the Stated Average Annual Mileage, unless Customer and Salem have agreed to an increase in the fixed charge per month for the remaining term of the lease.

This Schedule A (included Side One hereof) is hereby made a part of that certain Vehicle Lease and Service Agreement between the two parties dated as of the:        16th    day of        July, 2022

|  |  |
|---|---|
| SALEM LEASING CORPORATION | THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS |
|  | (Customer) |
| By: | By: |
| Title: SrVP Finance | Title: COO/CFO |
| Date: 3-17-202- | Date: 3/17/22 |
| Witness: Heather Mutchmutt | Witness: |

SALEM

**SCHEDULE A**

THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS

Schedule A No. 4

Page 1 of 2

LOCATION NAME    Statesville, NC

| Vehicle No (1) | Date of Delivery (2) | Lease Term Mos or Yrs (3) | Year (4) | Make (5) | Model & Type (6) | Serial Number (7) | Licensed Weight and/or Mfg. Gross lbs (8) | Original Value (9) | DEPREC Mly Amt (10) | CPI Index Fig 1987 Base (11) | Fixed Rental Charge Per Month In Advance (12) | Mileage Rate Per Mile (13) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | VEHICLE DESCRIPTION | | | | | | |
| 68748T | 9/-/22 | 7 Years | 2023 | Utility | 53 Trailer | 1UYVS2536P788¹501 | N/A | $60,118 | $69.37 | 887.51 | $888.13 | $0.035 |
| 68749T | 9/-/22 | 7 Years | 2023 | Utility | 53 Trailer | 1UYVS2538P788¹502 | N/A | $60,118 | $69.37 | 887.51 | $888.13 | $0.035 |
| 68750T | 9/-/22 | 7 Years | 2023 | Utility | 53 Trailer | 1UYVS253XP788¹503 | N/A | $60,118 | $69.37 | 887.51 | $888.13 | $0.035 |
| 68751T | 9/-/22 | 7 Years | 2023 | Utility | 53 Trailer | 1UYVS2531P788¹504 | N/A | $60,118 | $69.37 | 887.51 | $888.13 | $0.035 |
| 68752T | 9/-/22 | 7 Years | 2023 | Utility | 53 Trailer | 1UYVS2533P788¹505 | N/A | $60,118 | $69.37 | 887.51 | $888.13 | $0.035 |

**NOTES**

Notwithstanding anything in the Agreement to the contrary, it is agreed:

1. If Customer elects to provide physical damage coverage on vehicles leased or rented pursuant to the Agreement, Customer is liable to Salem for loss or damage to vehicles or substitutes, pursuant to Paragraph 10 of the Vehicle Lease and Service Agreement which its insurance carrier fails or refuses to pay. **CUSTOMER ACKNOWLEDGEMENT:** _____

9/-/22

Schedule A No. 4
Page 2 of 2

Notwithstanding anything in the Agreement to the contrary, it is mutually agreed:

1. The Original Value, Weekly Depreciation, and Fixed Charges Per Month are based upon manufacturer's quoted price for vehicles as of the date of execution by Customer of this Schedule A. In the event the manufacturer's quoted price for such vehicle is increased prior to the Date of Delivery of the vehicles, Customer agrees that for each $50 increase in price (or fraction thereof), the following shall be increased accordingly:

| ORIGINAL VALUE | WEEKLY DEPRECIATION | FIXED RENTAL CHARGE PER MONTH |
|---|---|---|
| $50.00 | $0.15 | $1.30 |

2. Primary Liability Insurance Responsibility:    Customer    Combined Single Limits $1,000,000 per accident.
   (Salem/Customer)

3. Physical Damage Responsibility:    Customer
   (Salem/Customer)

4. Fire and Theft Responsibility:    Customer
   (Salem/Customer)

5. Domicile of the Vehicle(s) listed on this Schedule A (City, State):    Taylorsville, NC

6. Salem domicile service facility for vehicles listed on this Schedule A:    Statesville, NC

7. Vehicle(s) will be operated only in the following states:    Same as tractors
   In the event that the states in which Customer operates require additional equipment or equipment modification to comply with environment requirements or Customer changes the states in which it operates so that changes are required, Customer shall be responsible for the cost of such changes or modifications.

8. Fuel tax reporting provided by:    Salem
   (Salem/Customer)

9. The fixed rental charges include the following pegged amounts for legalization:

   License - $25
   Property and/or Ad Valorem Taxes - $523
   Federal Highway Use Tax - $0
   Cost of Permits - $0

   Amounts spent by Salem in excess of these pegged amounts will be billed separately.

10. Exterior washing frequency will be _12_ per year.

11. Lettering and Painting one time amount:    $0

12. Deidentification of Graphics Responsibility:    Customer
    (Salem/Customer)

13. Stated Average Annual Mileage by unit:    50,000
    In the event that annual miles exceed the above by 5%, customer agrees to pay $0.10 per mile additional for all miles above the Stated Average Annual Mileage, unless Customer and Salem have agreed to an increase in the fixed charge per month for the remaining term of the lease.

This Schedule A (included Side One hereof) is hereby made a part of that certain Vehicle Lease and Service Agreement between the two parties dated as of the:    16th    day of    July, 2022

| SALEM LEASING CORPORATION | THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS (Customer) |
|---|---|
| By: | By: |
| Title: SVP Finance | Title: |
| Date: 9-2-2022 | Date: |
| Witness: Heather Mitchem | Witness: |

**<u>Exhibit C</u>**

**Termination Notice**



**KILPATRICK TOWNSEND**
ATTORNEYS AT LAW

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

1001 West Fourth Street
Winston-Salem, NC 27101
t 336 607 7300  f 336 607 7500

direct dial 336 607 7432
direct fax 336 734 2612
dgreene@kilpatricktownsend.com

August 29, 2023

**VIA EMAIL & FEDERAL EXPRESS OVERNIGHT DELIVERY**

Mr. David Rogalski
Mitchell Gold Co. d/b/a Mitchell Gold + Bob Williams
135 One Comfortable Place
Taylorsville, NC 28681
David.Rogalski@mgbwhome.com

>       **Re:    Salem Leasing Corporation – Notice of Lease Termination and Demand for Return of Leased Equipment**

Dear Mr. Rogalski:

This firm represents Salem Leasing Corporation ("Salem Leasing") regarding with respect to defaults by Mitchell Gold Co. d/b/a Mitchell Gold + Bob Williams ("Mitchell Gold") of its Lease Agreement, executed in July 2021 ("Lease"), a copy of which is enclosed for your reference. Under the Lease Agreement, Mitchell Gold leased certain commercial transportation equipment from Salem Leasing and agreed to pay various fees and charges for the periods of time specified in certain Vehicle Lease Orders, which were subsequently executed and incorporated as part of the Lease Agreement.

Salem Leasing was recently informed the Mitchell Gold has ceased operations and is insolvent. Pursuant to Section XII(B) of the Lease, Salem Leasing hereby terminates the Lease with immediate effect, and demands return of all of the leased vehicles and equipment, which are identified below by equipment number:

>       Tractors:
>       23800
>       23802
>       23803
>       23804
>
>       Trailers:
>       68748T

ANCHORAGE ATLANTA AUGUSTA BEIJING CHARLOTTE CHICAGO DALLAS DENVER HOUSTON LOS ANGELES NEW YORK PHOENIX RALEIGH
SAN DIEGO SAN FRANCISCO SEATTLE SHANGHAI SILICON VALLEY STOCKHOLM TOKYO WALNUT CREEK WASHINGTON WINSTON-SALEM

Mitchell Gold Co.
August 29, 2023
Page 2

> 68749T
> 68750T
> 68751T
> 68752T

You should contact me immediately to provide the location(s) of the leased equipment and make arrangements for its turn-over to Salem Leasing.

Salem Leasing reserves its rights to pursue all legal remedies available to it, including recovery of all amounts due under the Lease Agreement, interest, attorneys' fees and costs, and any additional damages that it is entitled by law to recover for Mitchell Gold's breach of the Lease.

If you have any questions regarding this matter, please contact me at the numbers listed above.

Sincerely,

Dustin T. Greene

Enclosure

cc:    Ms. Mitzi Keller *(w/out encls.)*


**SALEM**

# VEHICLE LEASE AND SERVICE AGREEMENT

July 16, 2021

This Agreement made on the date first above mentioned, between SALEM LEASING CORPORATION, hereinafter called Salem, with its principal address at 175 Charlois Blvd., Winston-Salem, NC 27103, and THE MITCHELL GOLD CO DBA MITCHELL GOLD + BOB WILLIAMS, hereinafter called Customer, with its principal address at 135 1 Comfortable Pl, Taylorsville, NC 28681.

**WITNESSETH**

**I. VEHICLES COVERED AND TERM:**

    **A.** Salem does hereby lease to Customer and Customer does hereby lease from Salem, the vehicle or vehicles described in Schedule(s) A (hereinafter, collectively, "Vehicles" or "Vehicle"), attached hereto and from time to time hereafter executed and made part of this agreement. Execution of Schedule A shall constitute Customer's authorization to Salem to acquire the Vehicles. The term of this Agreement shall commence with respect to each Vehicle on the date the Vehicle is tendered by Salem to Customer, or 48 hours after the date Salem notifies Customer that the Vehicle is available for delivery, whichever occurs first, and shall continue for the term specified on Schedule(s) A unless terminated earlier as provided for hereinafter. Customer shall (with the exception of a Vehicle purchased, pursuant to Paragraph XII hereof prior to the expiration of its lease term) return the Vehicle(s) to Salem at the location listed on its Schedule A in the same condition as when received, ordinary wear and tear excepted. If repairs are required, the lease term shall continue until such repairs are made. Any holding over after the expiration of a Vehicle's lease term shall be on a week-to-week basis and shall be subject to the terms of this agreement.

    **B.** Acceptance of Vehicles in service constitutes Customer's acknowledgement of compliance with Customer's specifications. Customer agrees to pay for any structural alterations (not to be made without Salem's prior written consent), special equipment, or material alteration in painting, lettering or artwork thereafter required by Customer. In the event that, subsequent to the date of execution of this Agreement by Salem, any Federal, State or local law, ordinance or regulation requires the installation of any additional equipment, Customer will be responsible for all costs including installation expenses.

    **C.** Where a Vehicle is operated by Customer with a trailer or other equipment not included on Schedule A, or not maintained by Salem under a separate agreement, Customer agrees that such trailer and/or equipment will be in good operating condition.

    **D.** Salem may finance the Vehicle(s) or any part thereof, and in that connection may as security, give the lender an installment sales instrument, mortgage, or security agreement covering such vehicles or assign amounts hereunder.

**II. OPERATION OF VEHICLE:**

    **A.** The Vehicles will be used and operated by Customer only in the normal and ordinary course of Customer's business and not in violation of any laws or regulations (including legal weight and size limits).

    **B.** Each Vehicle will be promptly returned by Customer to Salem's facility specified in Schedule A at the end of its lease term unless Customer purchases the Vehicle as provided for hereinafter.

**III. MAINTENANCE AND REPAIRS TO VEHICLES:**

    **A.** Salem agrees to provide from its facilities and at its costs: (1) Oil, lubricants, tires, and all other operating supplies and accessories necessary for the proper and efficient operation of the Vehicles; (2) Maintenance and repairs including all labor and parts which may be required to keep the Vehicles in good operating condition; (3) Painting and lettering at the time the Vehicles are placed into service as specified on Schedule A; (4) Washing of the Vehicles the number of times specified on Schedule A; and (5) Road service due to mechanical and tire failure.

    **B.** Customer shall report any and all faulty operations or other trouble with respect to any and all Vehicles no later than the date of occurrence in writing on forms provided by Salem according to DOT regulations. Except and until so reported, it shall be presumed that said Vehicles are in good repair. Customer further agrees not to cause or permit any person other than Salem or persons expressly authorized by Salem to make repairs or adjustments to Vehicles.

    **C.** Customer agrees to return each Vehicle to Salem for service and maintenance at the facility stated on Schedule A for a minimum of 8 hours per month during Salem's normal business hours.

**IV. FUEL:**

When Salem is designated on the Schedule A:

    **A.** Salem will provide fuel and Diesel Exhaust Fluid (DEF) for vehicles from its own or other designated facilities. The charge for fuel and DEF will vary over time and be billed to Customer in addition to the other charges provided for on the applicable Schedule A.

    **B.** If Customer purchases fuel and DEF from sources other than Salem's facilities or other designated facilities, Customer will be responsible for these charges.

**V. LEGALIZATION:**

    **A.** Salem agrees to pay for the state motor vehicle license for the licensed weight shown on Schedule A, personal property taxes and vehicle inspection fees for each Vehicle in the state of domicile, and Federal Highway Use Tax, but only up to the annual allowance amount for each item shown on Schedule A. Customer will be responsible for any increases or changes in assessment of these items thereafter.

**B.** Upon written request or where designated on Schedule A, where legal, Salem will apply for vehicle licenses and prorate or state reciprocity plates at Customer's request and cost.

**C.** Customer agrees to pay for any special license or pay any taxes resulting from the operation and use of the Vehicles including fuel taxes, mileage taxes, ton mileage taxes, highway or bridge tolls. Salem shall have the right to settle any claim or lien involving any Vehicle as a result of Customer's failure to pay any such taxes and Customer will immediately reimburse Salem.

**D.** Customer agrees to provide Salem with all documentation required for vehicle licensing and fuel tax reporting on a weekly basis. If Customer provides Salem with inaccurate information or late information, Customer agrees to reimburse Salem for any charges, penalties, or expenses. In addition, if Customer is consistently late in turning in accurate trip records, Salem shall have the right, after providing the Customer with 30 days prior notice, to cease applying for vehicle licenses and to cease administering the fuel tax reporting.

## VI. SUBSTITUTION AND EXTRA VEHICLES:

**A.** Salem agrees to furnish a substitute vehicle at no extra charge for any Vehicle which may be temporarily inoperable because of mechanical failure, the substitute to be as nearly as practicable the same size and appearance as the Vehicle, except that no special painting, lettering or other alterations need be made on the substitute vehicle. The substitute vehicle will be furnished to Customer whenever possible at the place at which the Vehicle was disabled and shall be returned by Customer to Salem at the site specified by Salem.

**B.** A substitute vehicle, while in Customer's service, shall be subject to all the terms and conditions of this Agreement as if it were a Vehicle. Salem's failure to furnish a substitute vehicle within a reasonable time, where it is obligated hereunder to do so, shall cause the charges applicable to the inoperable Vehicle to abate until the Vehicle is returned to Customer's service or until a substitute is tendered to Customer. Salem's liability in the event of such a failure shall be limited to the abatement of the charges for the inoperable Vehicle.

**C.** Salem shall have no obligation to furnish a substitute vehicle if the inoperable Vehicle is out of service for ordinary maintenance and service time, or is out of service because of damage resulting from collision or upset, theft, or is specialized, or carries a truck body not owned by Salem or has accessories for which Salem is not responsible, or is of a type Salem does not have in its rental fleet.

**D.** While a Vehicle is out of service because of damage resulting from collision or upset, theft, Salem will, at the request of Customer, rent Customer a replacement vehicle, if available from Salem's rental fleet, at a rental rate equal to the charges applicable to the inoperable Vehicle plus 20%. Irrespective of whether or not Customer rents a vehicle from Salem while a Vehicle is out of service for repairs of damage resulting from collision or upset, the charges applicable to the out of service Vehicle shall not abate.

**E.** Salem agrees to rent to Customer extra Vehicles on short-term rental basis when requested and if available. The charge for these vehicles will be at the lease rate of the last delivered vehicle plus 20%. If dissimilar, Customer shall pay published rental rate less 10%.

## VII. DRIVERS:

**A.** Customer agrees that each Vehicle be operated by a safe, careful, and properly licensed driver, who is the employee or agent of Customer, subject to Customer's exclusive direction and control and who operates the vehicle lawfully.

**B.** Salem agrees, at Customer's request, to assist Customer in developing a driver education and safety program.

**C.** Customer agrees that the Vehicles will not be operated in a reckless or abusive manner, or off an improved road or on a flat tire, or improperly loaded, or loaded beyond the manufacturer's recommended maximum gross weight shown on Schedule A. Customer agrees to cause its drivers to check oil and coolant levels in each Vehicle covered by this Agreement on a daily basis to prevent damage to any Vehicle resulting from failure to maintain proper oil and coolant levels. Customer agrees to reimburse Salem in full for damage to any Vehicle, including expenses, resulting from a violation of this provision. Customer will be responsible for all expenses of towing or removal of any mired Vehicle when not in Salem's possession or on Salem's premises.

**D.** Customer agrees to provide motor vehicle reports for all drivers who will operate the Vehicle(s) upon request by Salem.

## VIII. CHARGES:

**A.** Customer agrees to pay Salem the fixed charge, as stated on Schedule(s) A, in advance and each payment in advance thereafter, for each Vehicle upon receipt of Salem's invoice for same and to pay all other charges, specifically including but not limited to all fuel charges, the mileage rate per mile provided for under this agreement, and any additional charges owed to Salem, within 10 days of the date of Salem's invoice without deduction or set-off.

**B.** Mileage shall be determined from odometer readings. If the odometer fails to function, which failure Customer shall immediately report to Salem in writing, the mileage for the period in which the failure existed may be determined at Salem's option from (1) Customer's trip records, or (2) from the amount of fuel consumed and the miles per gallon record of Salem's averaged for the previous 30 days.

**C.** Salem shall add an amount equal to one and one-half percent (1-1/2%) or the maximum legally permissible amount to any charge(s), which remain unpaid for more than thirty (30) days after date of Invoice(s). Like charges may be made for each subsequent thirty- (30) day period that such rent and/or other charge(s) remains unpaid.

**D.** It is agreed by Customer that a Stated Average Annual Mileage is shown on the Schedule A and is used exclusively for depreciation rating purposes. On an annual basis, using the anniversary date as the base, the actual average mileage will be analyzed by Salem to determine any major variations over the stated figure. If in any year the actual average mileage exceeds the Stated Average Annual Mileage by 5%, Salem shall have the right to adjust its depreciation and rates

accordingly. The schedule by which Salem will determine its depreciation will be Salem's corporate policy depreciation schedule.

## IX. ADJUSTMENTS:

**A.** The parties recognize that the charges provided for in this Agreement are based on Salem's current cost of labor, parts and supplies. The cost of Salem's operation may fluctuate after the date of execution of this Agreement. Customer agrees that for each rise of 1% in the Consumer Price Index, as published by the U.S. Bureau of Labor Statistics (for All Urban Consumers for the United States) using a 1967 base year, above the base Index figure on Schedule A hereto, the fixed lease charge and mileage charge for each Vehicle, including excess mileage charges and those charges stated in the Mileage Guarantee, if any, shall be adjusted upward on trucks, tractors, trailers, and refrigeration in an amount equal to 1% of one-half of the fixed lease charge, and 1% of three-quarters the basic mileage charges.

**B.** Salem reserves the right to make annual C.P.I. adjustments. Any and all subsequent adjustments for Vehicles shall be based on the last index in which present rates are based or computed. Adjustment in charges shall be effective on the first day of each calendar month following the adjustment period and will be based on the latest index which has been published prior to such effective date. In the event the C.P.I. should be discontinued, another mutually agreeable cost adjustment index to adjust charges shall be agreed upon.

**C.** Customer agrees to pay for (1) any sales or use tax now or hereafter imposed upon the use of the Vehicle or on the rental or other charges accruing hereunder, (2) any increase in license or registration fees, including federal highway use tax, vehicle inspection fees, and personal property tax rates, or (3) any new or additional tax or governmental fees, adopted after the date of the execution of the applicable Schedule A by Customer, upon the fuel provided by Salem.

## X. INSURANCE:

**A.** LIABILITY COVERAGE: Customer agrees, at its own expense, to provide and maintain, at all times during the term of the Agreement, primary Auto Liability insurance covering the Vehicle(s) (including all substitute vehicles) with a combined single limit of not less than $3,000,000 US Dollars (unless different limits are specified on the attached Schedule A) for bodily injury and property damage resulting from any one accident. Such insurance shall be with an insurance carrier satisfactory to Salem which names and endorses Salem and any other party designated by Salem, by endorsement to the policy or policies, as an additional insured.

**B.** PHYSICAL DAMAGE COVERAGE: Customer will be responsible and pay for all loss (including theft) or damage to any Vehicle or substitute vehicle, including related expenses arising from any cause and regardless of how, including Salem's negligence, or where, including Salem's premises, the loss or damage occurred. Customer's liability for any Vehicle will not exceed the amount Customer would be required to pay to purchase such Vehicle under Article XII, D for leased Vehicles listed on Schedule A and fair market value for substitute, replacement or other additional vehicles not listed on the Schedule A. Customer agrees to furnish Salem with evidence of physical damage insurance coverage reasonably acceptable to Salem with Salem endorsed as a loss payee and named insured.

**C.** In the event of a partial loss, Customer or Customer's insurer will continue to pay ongoing lease charges during the period repairs are being completed. In addition, Customer shall reimburse Salem for repair costs within thirty (30) days after repair costs are completed, regardless of the status of insurance.

**D.** Customer will notify Salem immediately of the theft of, loss or damage to, any Vehicle, and in the case of physical damage, Salem will determine if the Vehicle is road-worthy and may continue in operation. All repairs will be conducted at a shop satisfactory to Salem.

**E.** In the event of theft or total loss of any Vehicle and provided Customer has paid all amounts due under the Agreement, Salem, at its option, will within 30 days (1) terminate the Agreement as to such Vehicle; or (2) provide a replacement vehicle for the remainder of the lease term subject to all terms and conditions of the Agreement.

**F.** VEHICLE CONTENTS: Loading or Unloading – Salem will not be liable for loss of, or damage to, any goods, cargo or property ("Property") left in or upon any vehicle at any time or place, including a garage or location operated by Salem (whether or not said loss or damage was caused by or related to the negligence of Salem, its agents, servants or employees).

**G.** FAILURE TO PROVIDE INSURANCE: In the event that Customer fails to provide and maintain the required insurance coverage or fails to furnish Salem with required evidence of insurance, Salem is authorized but not required to obtain such insurance on behalf of Customer and Customer agrees to pay Salem for the cost of the insurance so obtained and alternately, Salem may terminate the Agreement in accordance with the provisions of Paragraph XII thereof.

**H.** DEFENSE AND PROSECUTION OF CLAIMS: Customer and its agents and employees will cooperate with Salem and any insurer in the report, investigation, prosecution or defense, in any manner reasonably requested by Salem, respecting all accidents, claims or suits arising from the operation of the Vehicles and will promptly deliver to Salem copies of all papers or notices served upon or delivered to Customer, its agents or employees and will otherwise comply with the notification requirements of Customer's insurance carrier. Without limiting the foregoing, Customer will notify Salem immediately upon the occurrence of any accident involving a Vehicle and will cooperate in the post-accident steps required by Salem.

## XI. INDEMNIFICATION:

Customer will indemnify Salem and its agents, servants and employees and hold them harmless from any and all claims, suits, proceedings, costs, losses, expenses, damages and liabilities, including but not limited to attorneys' fees and court costs, claimed by any person, organization, association or other entity with respect to:

**A.** Any and all injuries (including death) or property damage sustained by such party as a result of the act or omission of Customer or any driver, agent, servant or employee of Customer, and

**B.** Any liability imposed upon or assumed by Customer under any Workers' Compensation Act or other employee benefit plan or contract whatsoever; and

C. Any claim based upon Customer's failure to comply with the terms and provisions of this Agreement; and

D. Any claim relating to the Vehicles, or any accessories or equipment furnished to Customer or the care, custody or operation of the Vehicles; and

E. Any damages caused by Customer's transportation or handling of any hazardous or toxic materials or substances. Any indemnity under this paragraph shall apply whether or not covered by required insurance and/or in excess of the required limits.

## XII. TERMINATION:

A. Either party may terminate the lease of any Vehicle prior to expiration of its term on any anniversary date of its Date of Delivery indicated on the Schedule A by giving to the other party at least 90 days prior written notice. If termination is effected by Salem for any reason other than breach or default, Customer will have the right, but not the obligation, to purchase in accordance with Article XII, Section D, any or all Vehicles with respect to which termination notice has been given on the termination date(s). If termination is effected by Customer, Customer will at Salem's option purchase in accordance with Article XII, Section D all Vehicles with respect to which termination notice has been given on the termination date(s).

B. In the event Customer becomes insolvent, files a voluntary petition in bankruptcy, makes an assignment for the benefit of creditors, is adjudicated bankrupt, permits a receiver to be appointed for its business, permits or suffers a material disposition of its assets, the lease of Vehicles will terminate at the election of Salem. Upon written notice sent to Customer, Salem may at its option demand that Customer purchases the Vehicles within 10 days of termination in accordance with Article XII, Section D.

C. Breach or Default

1. If Customer breaches or is in default of any provision of this Agreement and that breach or default is not cured within 7 days after written notice has been mailed to Customer, Salem may immediately, without further notice or demand, take possession of the Vehicles. If Customer fails to provide insurance in accordance with Article X, Salem may immediately take possession of the Vehicles. Salem will be entitled to enter upon any premises where the Vehicles may be and remove them and refuse to re-deliver them to Customer until such breach or default is cured without any of such actions being deemed an act of termination and without prejudice to the other remedies Salem may have under this Agreement and at law. Customer will continue to be liable for all charges accruing during the period the Vehicles are retained by Salem.

2. In the event Salem takes possession of any Vehicle and there is any property in or upon the Vehicle which belongs to or is in the custody or control of Customer, Salem may take possession of such items and either hold them for Customer until Customer claims them or place them in public storage for Customer at Customer's sole expense and risk of loss or damage.

3. If Customer's breach or default continues for 7 days after written notice has been mailed to Customer, Salem may terminate the Agreement. Upon termination, Salem may demand that Customer purchase, within 10 days, any or all Vehicles in accordance with Article XII D without prejudice to other remedies Salem may have under this Agreement and at law.

4. Customer agrees to pay Salem all Salem's costs and expenses, including reasonable attorney's fees, incurred in collecting amounts due from Customer or in enforcing any rights of Salem hereunder.

D. In the event Customer (pursuant to Article XII, A) shall choose to purchase or be required to purchase any Vehicle, or should Salem (pursuant to Article XII, B or XII, C) demand of Customer that it purchase any Vehicle, Customer agrees to purchase each such Vehicle for cash within the time provided for in this Agreement for its Original Value as shown on Schedule A, less the total depreciation which has accrued for such Vehicle in accordance with Schedule A, provided that such amount shall not be less than fifteen percent (15%) of its Original Value set forth in Schedule A. Additionally, Customer agrees to pay Salem an additional five percent of the depreciated Schedule A value and for the amount of any unexpired licenses, applicable taxes, including but not limited to US and Canadian personal property taxes and federal highway use taxes, and other prepaid expenses previously paid by Salem for the Vehicles prorated to the date of sale and will be responsible for any sales or use tax arising from the purchase. Customer will have no obligation or right to purchase any Vehicle as to which the term on Schedule A has expired.

## XIII. WARRANTIES:

Salem makes no express or implied warranties or representations as to any matter whatsoever including, without limitation, the condition of any Vehicle or its merchantability or fitness for any particular purpose. Except as otherwise expressly provided herein, no defect in, or unfitness of, any Vehicle will relieve Customer of the obligation to pay rent or make any other payments required hereunder or of any other obligation hereunder.

## XIV. ASSIGNMENT OF AGREEMENT:

This agreement shall be binding on the parties hereto, their successors, legal representatives and assigns. Customer does not have the right to sublease or transfer any of the Vehicles, nor to assign this Agreement or any interest herein or therein without the prior written consent of Salem. For purposes of this Article XIV, a change of control of Customer or Customer's assets (through merger, acquisition, change in ownership, material disposition of assets, or otherwise) shall be deemed an assignment for which Salem's prior written consent is required. Salem may freely assign this Agreement without Customer's consent.

## XV. FORCE MAJEURE:

Salem shall incur no liability to Customer for failure to supply any Vehicle, provide a substitute vehicle, repair any disabled Vehicle, or provide fuel for Vehicles, if prevented by a national emergency, war, act of terrorism, riot, fire, labor dispute, Federal, State, or Local law, rule, regulation, shortage (local or national), or fuel allocation program, or any other cause beyond

Salem's control whether existing now or hereafter. Notwithstanding Salem's inability to perform under such conditions, Customer's obligations hereunder shall continue.

## XVI. MISCELLANEOUS:

This Agreement is intended for general use throughout the United States and in the event that any of the terms or provisions hereof are determined by judicial action to be invalid or unenforceable in any given jurisdiction, then such terms or provisions shall be deemed null and void to the extent that they are deemed invalid or unenforceable, but without invalidating or rendering unenforceable the remaining terms and provisions thereof, and no such invalidation or unenforceability in any jurisdiction shall invalidate or render unenforceable such provisions in any other jurisdiction. This Agreement has been drafted with the cooperation and participation of all parties. Accordingly, no part of this Agreement shall be construed in favor of or against any party. It is agreed that this Agreement shall be deemed to be executed in Winston-Salem, North Carolina. This Agreement, and any and all disputes in any way relating to this Agreement (including matters of construction, validity, and performance) shall be governed by and construed in accordance with the substantive laws of the State of North Carolina without giving effect to the conflict of laws provisions thereof. Any action to enforce or interpret this Agreement shall be brought and maintained exclusively in the District or Superior Court of Forsyth County, North Carolina. The parties irrevocably submit and consent to the jurisdiction of said court.

## XVII. NOTICES:

All notices provided for herein shall be in writing and mailed to an officer of Salem and Customer at their respective addresses set forth above or at such other addresses designated in writing by either party, by registered or certified mail. This Agreement shall not be binding upon Salem until executed by its President or other duly authorized officer at its corporate office and shall constitute the entire Agreement and understanding between the parties concerning the Vehicles, notwithstanding any previous writings or oral undertakings, and its terms shall not hereafter be altered by any oral agreement or informal writing, nor by failure to insist upon performance, or failure to exercise any rights or privilege, but alterations, additions, or changes to this Agreement shall be accomplished only by written endorsement hereon, or amendment hereto, or additional Schedules made a part hereof duly executed by both parties.

## XVIII. FINANCIAL STATEMENTS:

Customer shall furnish Salem with annual financial statements throughout the lease term.

## XIX. HEADINGS:

Article headings do not constitute any part hereof and shall not be considered in the interpretation hereof.

**IN WITNESS WHEREOF, each of the parties hereto, has caused this Agreement to be duly executed the day and year first above written.**

**SALEM LEASING CORPORATION**

_Stephen Dula   SVP Finance_
(Name & Title)

By: _____
(Signature)

Witness: Heather Whitehurst

**THE MITCHELL GOLD CO**
**DBA MITCHELL GOLD + BOB WILLIAMS**
**(Customer)**

David Rogalskk, COO/CFO
(Name & Title)

By: _____
(Signature)

Witness: _____

**<u>Exhibit D</u>**

**Vehicle Title and Registration**

# CERTIFICATE OF ORIGIN FOR A VEHICLE



*A NAVISTAR COMPANY*

**DATE**
October 02, 2020

**INVOICE NO.**
L01002014

**VEHICLE IDENTIFICATION NO.**
3HCEUTAN6ML581215

**YEAR**
2021

**MAKE**
INTERNATIONAL

**BODY TYPE**
TRUCK/TRACTOR

**SHIPPING WEIGHT**
11006

**H.P. (S.A.E.)**

**G.V.W.R.**
32000

**NO. CYLS.**
6

**SERIES OR MODEL**
MV607 SBA 4x2

**ENGINE NAME**
CUM L9 350 350HP/2200 GOV

**ENGINE NO.**
74698967

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

**NAME OF DISTRIBUTOR, DEALER, ETC.**

WHITES INTERNATIONAL
7045 ALBERT PICK RD.
GREENSBORO, NC 27409

```
****************************
*     THIS VEHICLE HAS A
* 50-STATE EMISSION SYSTEM
****************************
```

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

**NAVISTAR, INC.**

BY: _____
(SIGNATURE OF AUTHORIZED REPRESENTATIVE)      (AGENT)

1111 NORTHSHORE DRIVE
KNOXVILLE, TN 37919-3805
CITY-STATE

**NAV** 2975081

NAM_LOC:
ORDER_NO:    490084

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than disclosed herein and warrant title to the vehicle.

**FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:**

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1

NAME OF PURCHASER(S) SALEM LEASING CORP

ADDRESS PO BOX 24788 WINSTON SALEM NC 27114

I certify to the best of my knowledge that the odometer reading is _____ 55 _____ No Tenths

WHALES INTL TRKS  068230
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this 12 day of OCT 20__ Year 2020

State of NC

County of GUILFORD

*USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION*

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

By: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this _____ day of _____ Year _____

State of _____

County of _____ Notary Public

*USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION*

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

By: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this _____ day of _____ Year _____

State of _____

County of _____ Notary Public

*USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION*

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____
NAME OF DEALERSHIP        DEALER'S LICENSE NUMBER

By: _____
Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this _____ day of _____ Year _____

State of _____

County of _____ Notary Public

*USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION*

### ODOMETER DISCLOSURE FOR RETAIL SALE

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading _____ 55 _____ No Tenths. ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage. WARNING-ODOMETER DISCREPANCY

Signature(s) of Seller(s) _____ Date of Statement 10/12/2020

Print SUSAN O. STEPHENS  068230
Dealer's No

Signature(s) of Purchaser(s) _____

Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this 12 day of JUNE Year 2020

Printed Name(s) of Purchaser(s) _____

Company Name (if Applicable) _____

Address of Purchaser(s) _____

State of NC

County of GUILFORD

*USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION*

### LIENHOLDER

1st lien in favor of _____

whose address is _____

2nd lien in favor of _____

whose address is _____

MVR-1
(Rev. 05/17)

## North Carolina Division of Motor Vehicles
# TITLE APPLICATION

**CHECK Appropriate Block/s** (Application cannot be processed without certification of services)

☐ Title Only – Vehicle Not in Operation

☑ Title and License Plate
Class of License NC TAG

☐ Inoperable Vehicle – Vehicle substantially disassembled and unfit or unsafe to be operated on the highway

☑ Truck Weight Desired 54,000
(This includes the truck, trailer and load)

☐ Plate No. Transferred _____
(List Plate Number and Expiration)

☐ Limited Registration Plate
(When property taxes are deferred)

For Hire Vehicle
☐ Yes or ☐ No

**I certify that all the above information is correct.** _____ (Customer's Initials)

## VEHICLE SECTION

| YEAR | MAKE | BODY STYLE | SERIES MODEL | VEHICLE IDENTIFICATION NUMBER | FUEL TYPE | ODOMETER READING |
|------|------|------------|--------------|-------------------------------|-----------|------------------|
| 2021 | INTERNATIONAL | TRUCK/TRACTOR | | 3HCEUTAN6ML581215 | D | |

## OWNER SECTION

Owner 1 ID # _____   SALEM LEASING CORPORATION
Full Legal Name of Owner 1 (First, Middle, Last, Suffix) or Company Name

Owner 2 ID # _____
Full Legal Name of Owner 2 (First, Middle, Last, Suffix) or Company Name

Joint applicants request this title to be issued with Joint Tenants with Rights of Survivorship? Check appropriate block:   Yes ☐   No ☐

| Residence Address (Individual) Business Address (Firm) | City and State | Zip Code |
|---|---|---|
| 220 DELRAY STREET | STATESVILLE, NC | 28677 |

| Mail Address (if different from above) | City and State | Zip Code |
|---|---|---|
| PO BOX 24788 | WINSTON SALEM, NC | 27114 |

| Vehicle Location Address (if different from residence address above) | City and State | Zip Code | Tax County |
|---|---|---|---|
| | | | IREDELL |

## LIEN SECTION

| **FIRST LIEN** | Account # | | **SECOND LIEN** | Account # |
|---|---|---|---|---|
| Date of Lien 10/12/2020 | Maturity Date (MH) | | Date of Lien | Maturity Date (MH ) |
| Lienholder ID # 46415653 | Lienholder Name JP MORGAN CHASE BANK N.A. | | Lienholder ID # | Lienholder Name |
| Address PO BOX 6026 | | | Address | |
| City CHICAGO   State IL   Zip Code 60680 | | | City   State   Zip Code | |

I certify for the motor vehicle described above that I have financial responsibility as required by law.

ALLIED WORLD SPECIALTY INSURANCE COMPANY
Insurance Company authorized in N.C.

6203-1545-00
Policy Number

| Purchased ☑ New ☐ Used | Purchase Date 10/12/2020 | From Whom Purchased (Name and Address) WHITES INTERNATIONAL 7045 ALBERT PICK RD GREENSBORO, NC 27409 | N.C. Dealer No. 068230 | Is this vehicle leased? If Yes, Attach Form MVR-330 ☐ Yes   ☐ No | Equipment # 23804 |
|---|---|---|---|---|---|

## DISCLOSURE SECTION

All motor vehicle records maintained by the North Carolina Division of Motor Vehicles will remain closed for marketing and solicitation unless the block below is checked.
☐ I (We) would like the personal information contained in this application **to be available for disclosure.**

**APPLICATION MUST BE SIGNED IN INK BY EACH OWNER OR AUTHORIZED REPRESENTATIVE OF FIRMS OR CORPORATIONS.**

I (we) am (are) the owner(s) of the vehicle described on this application and request that a North Carolina Certificate of Title be issued. I (we) certify that the information on the application is correct to the best of my (our) knowledge. The vehicle is subject to the liens named and no others. If a registration plate is issued or transferred, I (we) further certify that there has not been a registration plate revocation and that liability insurance is in effect on this vehicle on the date of this application as required by the North Carolina Financial Security Act of 1957.

OWNER'S SIGNATURE   SALEM LEASING CORP BY _____

Date 03/21/2022   County FORSYTH   State NC

I certify that the following person(s) personally appeared before me this day, each acknowledging to me that he or she voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated: Ami Marion _____ (name(s) of principal(s) ).

Notary Signature _____

RHONDA L. NIDAY
NOTARY PUBLIC - NORTH CAROLINA
SURRY COUNTY
MY COMM. EXPIRES
OCTOBER 5, 2023

Notary Printed or Typed Name RHONDA L NIDAY

My Commission Expires 10/6/23